OPINION
Defendant, Howard J. Washington, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of attempted murder in violation of R.C. 2923.02 as it relates to R.C. 2903.02 and two counts of felonious assault in violation of R.C. 2903.11. Pursuant to an indictment filed June 11, 1997, defendant was charged with the attempted murder and felonious assault of both Ronald Bird and Elizabeth Reese. Following four days of testimony, a jury acquitted defendant of the attempted murder of Reese, but found him guilty of the attempted murder of Bird and the felonious assault of both Bird and Reese. Defendant appeals, advancing the following assignments of error:
 I. The trial court erred to the prejudice of appellant by refusing to instruct the jury on the affirmative defense of self defense in violation of the appellant's state and federal constitutional rights to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.
 II. Mr. Washington's due process rights were violated and he was improperly denied a Crim.R. 29 acquittal when the evidence presented was insufficient to sustain a convivtion (sic).
 (A) The convictions of the trial court for one count of attempted murder as to Ron Bird and one count of felonious assault as to victim Elizabeth Reese should be reversed because they are against the manifest weight of the evidence and because the evidence in support of them was insufficient as a matter of law to prove the conviction beyond a reasonable doubt.
 (B). The court erred when it allowed testimony of the defendant-appellant to occur prior to the conclusion of the states (sic) case and failed to indicate whether that testimony was considered when the court overruled appellants (sic) motion for a rule 29 acquittal.
 III. The defendant was provided with ineffective assistance of counsel.
According to the state's evidence, in May 1997, Bird lived with his roommate, Lloyd Thompson, in an apartment at 5596 Ironwood Court. Bird, Thompson, defendant, and Reese were all acquaintances, the four having sometimes ridden motorcycles together. At approximately 7 p.m. on May 30, 1997, Bird drove Reese to her place of employment, The Continental Athletic Club ("club"), and accompanied her into the facility. As was his custom, Bird did not lock the doors to his car when he left it to enter the club.
Once inside, Reese obtained a guest pass for Bird. Bird stayed at the club for two or three hours, working out and watching television while Reese worked. After Reese's shift ended, the two left the club and drove a short distance to a nearby bar/pool hall. The two exited the car and went inside the bar. Again, Bird did not lock his car when he left it to go inside the bar.
Reese and Bird remained in the bar for approximately an hour and a half. While there, Bird drank two beers; Reese drank one or two mixed drinks. Reese then asked Bird if he would give her a ride to a nightclub where she worked. Bird agreed, but told her he wanted to stop at his apartment first so that he could change his clothes.
Upon arrival at the apartment, Bird turned the car's engine off and told Reese he would be right back. Before exiting the car, he heard a "commotion" from behind the passenger seat. Bird turned around and saw defendant in the rear passenger seat. According to Bird, defendant said something like "you mother-fucker is going to die" or "I'll kill you mother-fuckers, I can't believe what you're doing." Bird felt something hit him across the face and thought defendant had punched him. He soon realized that defendant was wielding a knife. Thereafter, defendant began stabbing Bird with the knife. Bird yelled to Reese to get out of the car. As Bird struggled to loosen defendant's grip on the knife, Reese exited the car over Bird through the driver's side door. Reese attempted to get the knife away from defendant and, in the process, grabbed the blade of the knife. Defendant eventually let go of the knife. Reese jumped out of the car and started running. Defendant then exited the car and chased after Reese.
After calling 911 and reporting the incident, Bird noticed Reese and defendant struggling in the parking lot. Bird told defendant to leave Reese alone and that the police were on the way. Defendant ran away before the police arrived.
Bird was taken to the emergency room of a nearby hospital. He was treated and released, but returned to the hospital two hours later. At that time, he was admitted and underwent surgery to remove a blood clot from his right arm.
Reese testified that for about a year prior to the incident on May 30, 1997, she and defendant lived together. She terminated the relationship in early May 1997 and moved in with some friends. On May 30, 1997, Bird gave her a ride to the club because her car was in the shop for repairs. About a half-hour before her shift ended, defendant came in and asked her what Bird was doing at the club. Reese told defendant that Bird was just visiting and was going to give her a ride. She then asked defendant to leave. Defendant became angry and left the club.
Reese's testimony regarding the events at the bar generally corroborated that of Bird. Reese further testified that when she and Bird arrived at Bird's apartment, the two were discussing whether they were afraid to die. According to Reese, when Bird parked the car, defendant sat up in the back seat and said something like "glad you're not afraid to die `cause you'll die today.'" Defendant then hit Bird. As Bird struggled with defendant, Bird told Reese to get out of the car because defendant had a knife.
After exiting through the driver's side door, Reese reached inside the door and attempted to get the knife away from defendant. In the process, she grabbed the knife by the blade and cut her left hand. After gaining control of the knife, she ran to the other side of the parking lot. Realizing that defendant was chasing her, she became frightened that defendant would regain control of the knife and attempt to hurt her with it, so she attempted to throw the knife over a fence. The knife hit the top of the fence, however, and fell down at her feet. At some point, defendant retrieved the knife and swung it at Reese, cutting her on the arm. She kicked at him and he dropped the knife. According to Reese, as the two punched and kicked each other, defendant said "you ruined my life and I'm going to kill you." Defendant eventually ran away. When the police arrived, Reese pointed out the location of the knife. She was later transported to a nearby hospital, where she was treated for her injuries and released.
As Reese was cleaning out Bird's car a few weeks after the incident, she found a pair of defendant's glasses on the floor of the back passenger seat. She gave the glasses to Bird, who turned them in to the police. Both the glasses and the knife were admitted into evidence at trial. Reese identified the knife as the one used by defendant on May 30, 1997, and the glasses as belonging to defendant.
Columbus Police Officer Jack Addington and his partner arrived at the scene at approximately 11 p.m. on May 30, 1997. Upon arrival, the officers found Bird covered in blood from numerous stab wounds. Reese gave the officers a full description of defendant and told them that the original attack had occurred in Bird's vehicle. She also directed the officers to the location of the knife.
Detective Thomas Burton of the Columbus Police Department's crime scene search unit testified that he arrived at the scene at approximately 3 a.m. and took photographs. At trial, Burton identified the photographs as depicting blood splatters on the sidewalk in front of 5596 Ironwood Court, on the outside of the driver's side door, on the backrest of the passenger seat, on the driver's seat and middle console and on the rear seat of Bird's car. Burton also identified photographs taken at the hospital of both Reese's and Bird's injuries.
Dr. Keith R. Smith, the physician who treated Bird in the emergency room on May 30, 1997, testified that Bird had lacerations on his forearm, neck and face. Dr. Smith testified that the stab wounds to Bird's forearm were very deep and caused significant muscle damage. He further testified that Bird had suffered a "through-and-through" wound to the cheek, meaning that he had a stab wound that went completely through both sides of his cheek.
The parties entered into two stipulations. The first was with regard to the chain of custody for the glasses that were admitted into evidence; the second was that no latent fingerprints of any value had been obtained from the knife.
Defendant's version of the events that took place on May 30, 1997, were contrary to the version propounded by Bird and Reese. Defendant testified that his relationship with Reese ended in November 1996, but she did not move out of his residence until May 26, 1997. At approximately 5:30 p.m. on May 30, 1997, Reese called defendant and asked him to bring to the club some of the belongings that she had not yet retrieved from defendant's home. After returning Reese's items to her, he returned home and did some body work on a friend's vehicle.
Defendant testified that he left his home again at approximately 9:30 p.m. and drove to Thompson's to pick up some parts for his motorcycle. Because Thompson was not at home, defendant headed toward his car to leave. Before defendant could reach his car, Bird drove into the parking lot, exited his vehicle, stepped toward defendant and asked him what he was doing at the apartment. According to defendant, Bird's speech was slurred and he smelled of alcohol. Reese then exited Bird's vehicle. As Bird moved closer to defendant, defendant noticed that Bird was attempting to reach for something behind him. Fearing that Bird was reaching for a weapon, defendant struck Bird in the face. Thereafter, Bird pulled a knife on defendant. The two began wrestling for the knife. Reese ran over to the men and joined in the struggle.
Defendant testified that, after defendant landed a few punches on Bird's face, defendant and Reese began struggling for the knife. Bird then lunged at him and according to defendant, "the knife obviously got him somewhere into his, his body somewhere." Defendant stated that when Bird was stabbed, neither he nor Bird had control of the knife. After that, Reese ended up with the knife and ran off with it. Thereafter, defendant hit Bird hard enough to knock him into the open passenger door of Bird's car. As he was falling, Bird grabbed defendant's face, pulled his glasses off, and pulled defendant into the car with him. Eventually, defendant was able to push himself off of Bird and exit the vehicle from the passenger side.
Defendant further testified that he ran toward his car, which was parked in a cul-de-sac about forty-five feet away from the entrance to Thompson and Bird's apartment. As he was running toward his car, Reese came out of the dark carrying the knife. Because defendant did not know what Reese intended to do with the knife, he kicked it out of her hand and then kicked her in the ribs. Defendant got into his vehicle and drove home. He did not call the police to report the incident.
By the first assignment of error, defendant argues that the trial court committed prejudicial error by refusing to charge the jury on the affirmative defense of self-defense. The trial court found that the facts of the case did not warrant an instruction on self-defense and, therefore, refused to give such an instruction.
Self-defense is an affirmative defense; thus, defendant has the burden of proving that he acted in self-defense. R.C.2901.05(A); State v. Gore (Feb. 18, 1997), Franklin App. No. 96APC05-606, unreported (1997 Opinions 377). "A trial court is not required to instruct the jury on self-defense in every case where it is attempted to be presented. The defendant must first present sufficient evidence at trial to warrant such an instruction."Bucyrus v. Fawley (1988), 50 Ohio App.3d 25, 26.
By definition, the defenses of accident and self-defense are inconsistent. State v. Barnd (1993), 85 Ohio App.3d 254, 260. A defendant claiming accident denies a culpable mental state. By contrast, a defendant claiming self-defense concedes that he intended to commit the act, but asserts that he was justified in doing so. Id. In considering the two defenses, the Ohio Supreme Court has stated that "[s]elf-defense presumes intentional, willful use of force to repel force or escape force. Accidental force * * * is exactly the contrary, wholly unintentional and unwillful." State v. Champion (1924), 109 Ohio St. 281, 286-287.
A review of the record reveals that the testimony offered by Bird, Reese and defendant himself is factually inconsistent with the defense of self-defense, and, therefore, the trial court properly refused such an instruction. Both Bird and Reese testified that defendant was the aggressor and initially attacked them with the knife while the two sat in Bird's car. Reese further testified that defendant attacked her with the knife in the cul-de-sac after she ran away from Bird's car. Although defendant asserted that Bird initially pulled the knife on him, he testified that he [defendant] never exerted any control over the knife. Defendant's claim was essentially one of accident, in which Bird and Reese were injured while struggling with defendant over the knife. Because defendant claimed that the injuries suffered by Bird and Reese were the result of an accident, he was not entitled to an instruction on self-defense. Accordingly, the first assignment of error is overruled.
By the second assignment of error, defendant contends that: (1) there was insufficient evidence to support his convictions for the attempted murder of Bird and the felonious assault of Reese; (2) the trial court erred in denying his Crim.R. 29 motions for acquittal on those two charges; and (3) his convictions on these two charges were against the manifest weight of the evidence.
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. * * *" State v. Smith (1997), 80 Ohio St.3d 89,113, following State v. Thompkins (1997), 78 Ohio St.3d 380, 386. "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Clemons (1998), 82 Ohio St.3d 438, 444, following State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." Clemons, supra.
Defendant argues that the evidence was insufficient to sustain a conviction for the attempted murder of Bird. In order to sustain a conviction for attempted murder, the state was required to prove that defendant "purposely" engaged in conduct that, if successful, would have caused Bird's death. R.C.2923.02; 2903.02. A person acts "purposely" when "it is his specific intention to cause a certain result." R.C. 2901.22(A). The evidence presented by the state was sufficient to allow the jury to conclude that defendant acted with a purpose to kill Bird. Reese testified that she and defendant had just ended a year-long relationship. She further testified that defendant was angry that Bird was at the club with her. Both Bird and Reese testified that defendant hid in the back seat of Bird's unlocked car, verbally threatened to kill them both, and attacked Bird from behind with a knife. Dr. Smith testified that Bird suffered very deep wounds to his arms and a "through-and-through" wound to his cheek. Construed in the state's favor, that evidence is sufficient to meet the elements of attempted murder under R.C. 2923.02/2903.02.
Unquestionably, defendant testified to the contrary, creating a credibility issue to be resolved by the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. ("On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.") Despite defendant's testimony to the contrary, as well as some inconsistencies in the testimony of the state's witnesses regarding defendant's intent-to-kill statements, the state's witnesses to a large degree corroborated each other on the necessary elements of the offense of attempted murder. In exercising its discretion to assess credibility, the jury specifically found the state's witnesses to be credible.
Defendant also argues that the evidence was insufficient to sustain a conviction for felonious assault against Reese. In order to sustain a conviction for felonious assault, the state was required to demonstrate that defendant "knowingly" either (1) caused serious physical harm to Reese, or (2) caused or attempted to cause physical harm to Reese by means of a deadly weapon. R.C.2903.11(A)(1) or (2). A person acts "knowingly" when "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Defendant errs when he argues that Reese was injured only when she was wrestling the knife away from defendant in the car. Reese testified that after her unsuccessful attempt at throwing the knife over the fence, defendant retrieved the knife, threatened to kill her, and swung the knife at her, cutting her on the arm.[1] The evidence presented by the state was sufficient to allow the jury to find that defendant "knowingly" attempted to cause physical harm to Reese by means of a deadly weapon and thus convict defendant under R.C. 2903.11(A)(2).
Defendant also argues that he was entitled to an acquittal on both of these charges pursuant to Crim.R. 29 and that the trial court erred in allowing him to testify prior to the conclusion of the state's case and in failing to indicate whether or not defendant's testimony was considered when the court overruled defendant's Crim.R. 29 motion at the close of the state's case.
After Burton, Bird, Reese and Officer Addington testified, the state informed the court that its final witness, Dr. Smith, was unavailable to testify until the following morning. Defense counsel agreed to allow defendant to testify out of order, prior to the conclusion of the state's case. Defendant testified in the afternoon; Dr. Smith offered his testimony the next morning. After Dr. Smith completed his testimony, the state rested. Defendant moved for a Crim.R. 29 acquittal, which was overruled. Thereafter, defendant, having no further evidence to present, rested. Defendant renewed his Crim.R. 29 motion, which was again overruled.
Crim.R. 29(A) provides:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
The decision of a trial court to deny a Crim.R. 29(A) motion for acquittal based on the sufficiency of the evidence will be upheld if, after viewing the evidence in a light most favorable to the state, the reviewing court finds that any rational trier of fact could have found the essential elements of the charge proven beyond a reasonable doubt. State v. Dennis (1997), 79 Ohio St.3d 421,430.
Defendant has not demonstrated that the trial court erred in allowing him to testify prior to the conclusion of the state's case, nor has he demonstrated that the trial court improperly considered his testimony when ruling on the Crim.R. 29 motion asserted prior to the close of the state's case-in-chief. This court has already determined that sufficient evidence was presented to support defendant's convictions. The evidence upon which we based this finding was presented prior to defendant's testimony and prior to defendant's first Crim.R. 29 motion. At the time defendant testified, the state had already presented its main prosecution witnesses; therefore, counsel was in a position to fully develop defendant's testimony at the time it was offered. The only remaining prosecution witness was the physician who treated Bird in the emergency room, who offered only corroborating testimony as to the injuries Bird had suffered. Furthermore, given that the record demonstrates that the evidence provided by the state's main prosecution witnesses was sufficient to sustain defendant's convictions, any error in allowing defendant to testify prior to the close of the state's case was harmless.
Since the standard of review is the same for determining whether sufficient evidence supports a defendant's conviction and a trial court's decision regarding a Crim.R. 29 motion for judgment of acquittal, we conclude that the trial court did not err in overruling defendant's Crim.R. 29 motion.
Finally, defendant argues that his convictions were against the manifest weight of the evidence. In order for an appellate court to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Thompkins, supra, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy (1998), 84 Ohio St.3d 180, 193. ("`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'") Thompkins, supra, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way and created such a manifest miscarriage of justice that defendant's convictions must be reversed and a new trial ordered.
Having found that the trial court did not err in overruling defendant's Crim.R. 29 motions and that his convictions for the attempted murder of Bird and the felonious assault of Reese were supported by sufficient evidence and were not against the manifest weight of the evidence, we overrule the second assignment of error.
By the third assignment of error, defendant contends that trial counsel was ineffective in several respects: (1) failing to file a motion to suppress statements made to the police; (2) allowing defendant to testify despite knowledge that defendant's testimony was inconsistent with statements given to the police; (3) failing to object to leading questions and hearsay testimony; (4) failing to object to defendant testifying prior to the conclusion of the state's case-in-chief; (5) failing to adequately argue the Crim.R. 29 motion; (6) failing to conduct a proper investigation prior to trial; (7) failing to present an adequate closing argument; and (8) failing to object to the introduction of photographs.
The Ohio Supreme Court set forth the test to be applied in determining the effective assistance of counsel in State v.White (1998), 82 Ohio St.3d 16, 23:
 In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation was deficient and that he was prejudiced by that deficient performance. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. To establish prejudice, the defendant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
The record does not support defendant's claim that trial counsel was ineffective in failing to file a motion to suppress. The Sixth Amendment to the United States Constitution does not require trial counsel to file a motion to suppress in every case.State v. Flors (1987), 38 Ohio App.3d 133, 139. The burden is on the defendant to point to evidence in the record supporting suppression of the evidence. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." Statev. Gibson (1980), 69 Ohio App.2d 91, 95.
Initially, we note that defendant does not specify what statements should have been suppressed. Furthermore, the only evidence in the record supports the view that defendant validly waived his Miranda rights before giving his statement to the police. Defendant testified that the police had informed him several times that he did not have to speak to them and that he could contact a lawyer at any time. Defendant also admitted that he signed a paper waiving his right to consult a lawyer before giving his statement. The record is devoid of facts which would indicate the statements were coerced or otherwise illegally obtained during police custodial interrogation. Moreover, even assuming that the statements defendant made to the police should have been suppressed, we fail to see how the outcome of the trial clearly would have been different had a motion to suppress been filed.
Defendant next contends that trial counsel was ineffective because he permitted defendant to testify in his own defense, despite knowledge that defendant's testimony was inconsistent with statements given to the police. On cross-examination, defendant admitted that the statement he gave to the police upon being taken into custody differed in many respects from the testimony offered at trial. For instance, defendant told the police that he went over to Thompson's to tell him to come over to his house and pick up a motorcycle that Thompson had stored in his garage; however, as noted previously, at trial he testified that he needed to pick up some parts at Thompson's. Defendant also told the police that he parked his car in the parking lot in front of Thompson's apartment about five spaces away from where Bird's car was parked. At trial, he testified that he parked in a cul-de-sac forty-five feet away from Bird's car. Defendant also failed to tell the police, as he testified at trial, that Bird had pulled his glasses off and pulled him into his car and that he had a subsequent altercation with Reese. Defendant explained these discrepancies by stating that when he was questioned by the police, he did not want to "elaborate" on his answers.
Counsel made a tactical decision to allow defendant to testify. A defense of self-defense or an allegation of accident could only be presented through use of the defendant's testimony. If the defendant did not testify, virtually no defense could be presented. If the defendant did testify, he could be impeached with his prior statements. Counsel and the defendant decided in favor of the defendant testifying. Counsel's decision to allow defendant to testify does not fall below an objective standard of reasonable representation, nor was trial counsel's decision violative of any of his essential duties to defendant.
Defendant next claims that trial counsel was ineffective in failing to object to leading questions and hearsay evidence. App.R. 12(A)(2) provides that an appellate court may disregard any assignment of error presented if the party raising it fails to identify in the record the error on which the assignment is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A). Further, App.R. 16(A)(3) provides that an appellant's brief must contain, inter alia, a statement of the assignments of error, with reference to the place in the record where each error is reflected. Because defendant has failed to specify the evidence that defendant claims should have been challenged, defendant's claim is waived.
Having already considered and rejected defendant's claims that the trial court erred in overruling his Crim.R. 29 motions for judgment of acquittal and in allowing defendant to testify prior to the conclusion of the state's case, we cannot conclude that counsel's failure to more vigorously argue the Crim.R. 29 motions or to object to the sequencing of testimony rendered his performance deficient or that defendant suffered prejudice as a result.
Defendant next asserts that trial counsel failed to conduct a proper investigation prior to trial. Where the allegation of ineffective assistance of counsel is based on facts dehors the record, the appropriate remedy is a proceeding for postconviction relief. Gibson, supra. Because a petition for postconviction relief is the only mechanism whereby a convicted defendant can present evidence outside the original trial record, we cannot determine in this appeal whether defendant's trial counsel was ineffective for failing to properly investigate the case prior to trial.
With regard to defendant's contention that trial counsel was ineffective by giving a substandard closing argument, we note that defendant does not set forth what specific arguments trial counsel failed to make that should have been made. Furthermore, upon review of the closing argument presented by counsel, we find no basis to conclude that defendant's performance was deficient or that the outcome of the trial clearly would have been different had counsel asserted different arguments in closing.
Defendant's final assertion is that trial counsel was ineffective in failing to object to certain photographs that depicted the injuries suffered by Bird and Reese because no testimony regarding injuries accompanied the photographs. Upon review of the record, we conclude that counsel had no basis to object to the introduction of any of the photographs admitted at trial, all photographs having been properly authenticated. Furthermore, Bird, Reese and Detective Burton all offered testimony as to the injuries depicted in the photographs. Given the foregoing, counsel was not ineffective in failing to object to these photographs.
In conclusion, a review of the record in this case reveals that trial counsel comported himself in a professional manner, was prepared for trial, and was an effective advocate for his client. Defendant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by counsel's performance. Accordingly, defendant's third assignment of error is overruled.
Having overruled defendant's assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BOWMAN and TYACK, JJ., concur.
[1] A knife is included within the definition of "deadly weapon." R.C. 2923.11(A) (Committee Comment).