OPINION
Norman W. Jones appeals the convictions and sentences imposed upon him by the Franklin County Court of Common Pleas. Jones asserts that we must reverse his convictions because he did not receive effective assistance of counsel in the trial court. We disagree because Jones failed to demonstrate that his trial counsel performed deficiently or that he did not receive a fair trial. Jones also asserts that his convictions are against both the sufficiency and manifest weight of the evidence. We disagree because, based upon the evidence in the record, a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt and the trier of fact did not clearly lose its way or create a manifest miscarriage of justice. Jones next asserts that the trial court erred in imposing consecutive maximum sentences upon him. We disagree because the trial court properly considered the statutory factors and set forth its basis for imposing consecutive maximum sentences. Finally, Jones asserts that the trial court erred by failing to merge certain offenses for the purpose of sentencing. We disagree because independent actions formed the basis for each conviction upon which the trial court imposed sentence. Accordingly, we overrule each of Jones' assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
On July 28, 1998, the Franklin County Grand Jury returned a sixteen count indictment charging Jones with one count of engaging in a pattern of corrupt activity, in violation of R.C.2923.32; seven counts of aggravated robbery with firearm specifications, in violation of R.C. 2911.01; five counts of robbery, in violation of R.C. 2911.02; two counts of involuntary manslaughter with firearm specifications, in violation of R.C.2903.04; and one count of felonious assault with a firearm specification, in violation of R.C. 2903.11. Jones waived a jury trial and opted for a bench trial.
At trial, several former members of the Linden Avenue Crips gang ("the Crips") testified that Jones was the leader of their gang. The Crips committed a series of convenience store robberies and other violent crimes between September 1996 and February 1997.
Former Crip Teia Armstrong testified that Jones, as the highest-ranking Crip or "OG," conducted the Crips' regular Friday meetings. Jones possessed the ultimate authority in all gang matters and could override any group vote. Jones would dole out "assignments" to gang members and any member who refused or failed to carry out an assignment was punished.
Armstrong testified that Jones and the second-ranked Crip, Lesshan McCullough, planned the February 15, 1997 robbery of the Fast and Friendly convenience store in Armstrong's presence. Jones determined that he and another Crip would enter the Fast and Friendly with firearms, and he assigned Armstrong and another Crip to accompany them and remove the money from the cash register. Jones, Armstrong, and the two other Crips robbed the Fast and Friendly at gunpoint and took cigarettes, cash from the cash register, and cash from a customer.
Armstrong and former Crip Faith Johnson testified that Jones also organized the February 20, 1997 robbery of Don's Quick Stop. Jones assigned Armstrong to carry a twelve-gauge shotgun and Crip Quantez Wright to carry a nine-millimeter rifle while Johnson and Crip Stephen Wright were to take money and cigarettes. The four Crips carried out the robbery as assigned, except Stephen Wright agreed to trade assignments with Armstrong. Stephen and Quantez Wright fired shots in the course of the robbery, killing one person and injuring another.
Armstrong also testified that she, Jones, and three other Crips members planned and carried out the February 25, 1997 robbery of Stafford's Market. They entered the store with firearms and removed money, food stamps, candy, and cigarettes.
Former Crip Lamar Colemen also testified regarding the structure of the Crips, the Crips members, Jones' leadership role in the Crips, and the Crips' activities in 1996. Coleman, Johnson, and Armstrong each admitted they were serving time in prison for at least one of the crimes for which they testified, and that they entered into plea agreements with the state in which they agreed to testify truthfully about the Crips.
Columbus Police Detective Stan Latta testified that he interviewed Quantez Wright after police arrested Quantez for an unrelated robbery. During Quantez's interview, Detective Latta learned of the Crips' involvement in the Don's Quick Stop incident and of Jones' role in the Crips. Quantez showed Detective Latta the vacant apartments on Linden Avenue and a house on Old Leonard Avenue where the Crips stayed and held meetings. Detective Latta obtained warrants to search both locations.
Columbus Police Officer Bruce Beard testified that he observed Jones exit a vacant Linden Avenue apartment that police suspected was a haven for robbery suspects. Officer Beard approached Jones, informed him about the robbery investigation, and asked to speak to him. Jones appeared nervous as he answered Officer Beard's questions. When Jones began fumbling with something in his right pocket, Officer Beard became concerned that Jones was armed. Officer Beard asked Jones to remove his hands from his pockets. Jones pulled out a plastic bag of crack cocaine and fled.
Police caught, arrested, and searched Jones. They recovered a receipt for a twelve-gauge shotgun, a paper with the Crips symbol on it, and a bandana with two holes cut out for use as a mask. In executing search warrants, police later recovered a document entitled "Crips By-Laws" that contained Jones' gang signature accompanied by an "OG" notation, a facemask marked in Jones' handwriting with his gang name, the "Crip prayer," the "Crip constitution," and several additional bandanas, firearms, bullets, and shell casings.
An expert on gangs testified regarding Jones' gang name, the hierarchy in gangs, and the significance of gang graffiti and writings. A handwriting expert identified Jones' handwriting on the documents recovered by police.
The trial court found Jones guilty of ten counts of the indictment. Specifically, the trial court found that: (1) between September 19, 1996 and February 27, 1997, Jones engaged in a pattern of corrupt activity in violation of R.C. 2923.32 (count one); (2) on February 15, 1997, Jones committed aggravated robbery with a firearm upon Fast and Friendly store owner Mohamed Quteifan and Fast and Friendly customer Chris Oliver (counts eight through eleven); (3) on February 20, 1997, Jones ordered others to use firearms to commit aggravated robbery at Don's Quick Stop, which resulted in the involuntary manslaughter of Mustafa Rabia and the felonious assault upon Don's Quick Stop employee Mohamed Fitiwi (counts twelve through fourteen); and (4) on February 25, 1997, Jones committed aggravated robbery with a firearm upon Stafford's Market owner Verendra Patel (counts fifteen and sixteen).
For sentencing, the trial court merged the robbery offenses contained in counts nine, eleven, and sixteen with the aggravated robbery offenses contained in counts eight, ten, and fifteen respectively. The court sentenced Jones to consecutive maximum prison sentences of fifteen years on count one and ten years each on counts eight, ten, twelve, thirteen, fourteen and fifteen, for a total of seventy-five years imprisonment. The trial court imposed an additional nine years imprisonment for three firearm specifications. The trial court issued a written decision detailing its reasons for imposing consecutive maximum sentences upon Jones. Jones appeals, asserting the following four assignments of error:
 I. Defendant was denied effective assistance of counsel as guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 II. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 III. The trial court erred in imposing the maximum available sentence consecutively on each count.
 IV. The trial court violated the double jeopardy protections afforded by the federal and state constitutions against cumulative punishments when it sentenced defendant-appellant to consecutive sentences for the same criminal conduct.
In his first assignment of error, Jones asserts that he did not receive effective assistance of counsel. Specifically, Jones asserts that his counsel performed deficiently by failing to: (1) file a pretrial motion to suppress evidence arising from the search conducted by Officer Beard; (2) effectively cross-examine his co-conspirators; (3) move for an acquittal after the state rested its case; (4) file a pretrial motion attacking the sufficiency of the search warrants; (5) object to testimony by the state's gang expert; and (6) object to the testimony of the state's handwriting expert.[1]
To obtain reversal of a conviction based upon ineffective assistance of counsel, a defendant must show:
 * * * (a) deficient performance, "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment"; and (b) prejudice, "errors *** so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Ballew (1996), 76 Ohio St.3d 244, 255, citing Strickland v. Washington (1984), 466 U.S. 668, 687.
As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and *** the Constitution does not guarantee such a trial."United States v. Hasting (1983), 461 U.S. 499, 508-509.
Jones contends that his trial counsel exhibited deficient performance by failing to move to suppress the evidence police found when they stopped and searched him and when they executed the search warrants.
The Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case. State v. Flors (1987), 38 Ohio App.3d 133, citingKimmelman v. Morrison (1986), 477 U.S. 365. The burden is on the defendant-appellant to point to evidence in the record supporting suppression of evidence. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." Statev. Gibson (1980), 69 Ohio App.2d 91, 95.
Failure to file a motion to suppress may constitute ineffective assistance of counsel where there is a solid possibility that the court would have suppressed the evidence.State v. Garrett (1991), 76 Ohio App.3d 57. However, even when some evidence in the record supports a motion to suppress, we presume that defense counsel was effective if "the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act." State v. Edwards (July 11, 1996), Cuyahoga App. No. 69077, unreported, citing State v.Martin (1983), 20 Ohio App.3d 172. See, also, Strickland, supra, at 689.
In this case, Jones first asserts that he spoke with Officer Beard during a consensual encounter and that Officer Beard possessed no authority to seize him when he attempted to flee from that consensual encounter. Thus, Jones asserts that if his counsel had filed a motion to suppress, it would have successfully prevented the state from admitting the evidence it found on him. The state contends that Office Beard stopped Jones based upon reasonable suspicion, and that Jones' trial counsel correctly surmised that a motion to suppress would have been futile.
When a law enforcement officer possesses a "reasonable suspicion" that an individual is committing or about to commit a criminal activity, he may stop the individual and detain him long enough to dispel that suspicion. See, generally, Terry v. Ohio
(1968), 392 U.S. 1, 19; State v. Andrews (1991), 57 Ohio St.3d 86,87 at fn. 1. A law enforcement officer possesses a "reasonable suspicion" if he or she can state specific and articulable facts, which, together with rational inferences therefrom, warrant the intrusion. See State v. Bobo (1988), 37 Ohio St.3d 177, 178; see, also, United States v. Quarles (C.A. 8, 1992), 955 F.2d 498, 501. The justification for the stop must be viewed in light of the totality of circumstances presented to the officer at the time. See United States v. Sokolow (1989), 490 U.S. 1, 8; State v.Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
When a law enforcement officer does not possess a reasonable suspicion or more, of criminal activity, the individual possesses the right to walk away and go about his business.Florida v. Royer (1983), 460 U.S. 491, 498. However, unprovoked flight may fuel reasonable suspicion, because flight is the polar opposite of "going about one's business." Illinois v. Wardlow
(2000), 528 U.S. ___, 145 L.Ed.2d 570, 577.
Officer Beard testified that he stopped Jones as Jones was exiting a vacant apartment previously identified as a haven for the Crips to orchestrate robberies. When police approached Jones, he began acting nervous and started fumbling with something in his pocket. Jones pulled a plastic bag of cocaine out of his pocket, and then fled. Based upon these facts, we find that Jones' trial counsel could reasonably have decided that, even if the police's initial contact with Jones was a consensual encounter, Jones' subsequent actions gave rise to reasonable suspicion and then to a lawful arrest. Thus, filing a motion to suppress would have been a futile act.
Jones also asserts that his trial counsel performed deficiently by failing to challenge the sufficiency of the search warrants. Jones contends that the trial court would have suppressed the evidence discovered in the searches if his attorney had raised a challenge to the warrants. However, Jones does not raise any grounds upon which the warrants are invalid. Moreover, even if the warrants were invalid, Jones has not demonstrated that he possessed a sufficient expectation of privacy in any of the properties searched with standing to raise a Fourth Amendment violation. Therefore, we find that Jones' trial counsel could have reasonably decided that the police possessed legally valid search warrants and that filing a motion to suppress would have been a futile act.
Jones next asserts that his trial counsel was ineffective in cross-examining the three witnesses who were former members of the Crips. Generally, whether to cross-examine witnesses and the extent of that cross-examination is a tactical matter committed by the discretion of trial counsel that cannot form the basis for an ineffective assistance of counsel claim. State v. Otte (1996),74 Ohio St.3d 555, 565, citing State v. Brown
(1988), 38 Ohio St.3d 305, 319.
An attorney's goal in cross-examination of a witness is not typically apparent from one or two isolated questions. In this case, the isolated excerpts Jones quotes from his trial counsel's cross-examinations do not reveal a clear purpose. However, a broader review of the transcript clarifies counsel's attempt to depict Jones as a participant in, rather than the mastermind of, the various crimes with which Jones was charged. Given the overwhelming evidence against Jones, his trial counsel's technique fell well within the range of sound trial strategy.
Likewise, although Jones' counsel did not extensively question the former Crips member who testified against Jones regarding their plea agreements with the state, a review of the transcript reveals that each former Crip member admitted to making such an agreement. Additionally, each Crip member testified about the various crimes they participated in, about those to which they pled guilty, and about those to which the state agreed not to pursue. Therefore, the trial court was sufficiently appraised of the motives potentially affecting the witnesses' credibility. Jones' trial counsel adopted a reasonably sound trial strategy by choosing not to waste time presenting cumulative evidence.
Jones next asserts that his trial counsel was ineffective in his failure to object to the qualifications of the state's gang expert and handwriting expert. Pursuant to Evid.R. 702(A), an expert's testimony is not admissible unless the proponent can show that the witness is qualified as an expert by specialized knowledge or experience, the witness possesses knowledge that is not within the knowledge or experience of the average trier of fact, and the witness bases his testimony upon reliable, scientific, technical, or other specialized information.
Jones asserts that the state's gang expert, Detective Wildman, based his testimony upon hearsay and speculation. However, the state presented evidence that Detective Wildman qualified as an expert based upon his years of experience in a police gang unit and his one hundred thirty hours of specialized training. Thus, Detective Wildman's testimony was not based upon mere hearsay and speculation. The knowledge and experience he gained while investigating gang matters gave him knowledge that is not possessed by the average trier of fact, such as the significance of gang graffiti and seemingly meaningless phrases, the typical structure of a gang, and alliances among gangs. Additionally, Detective Wildman's testimony was largely cumulative, as facts regarding Jones' gang name and his status and role within the Crips was described by several former gang members. Therefore, even if an objection to Detective Wildman's testimony could have been successful, Jones was not prejudiced by his counsel's failure to object.
The state also presented evidence that its handwriting expert, Detective Bennett, testified to matters beyond the knowledge and experience of laypersons. Detective Bennett explained that, based upon his twenty-seven years of experience and training, he posses the ability to identify handwriting characteristics that serve as indicators of the authorship of a writing. Detective Bennett testified that his opinion was based on reliable, specialized information. Specifically, he based his opinion upon his analysis of handwriting characteristics such as the estimated speed of the writing, the size relationship among letters, the writer's slant, and the letter formation. Thus, Detective Bennett was qualified to give expert testimony, and any attempt by Jones' trial counsel to object to his testimony would have been futile.
Finally, Jones asserts that his trial counsel demonstrated ineffectiveness when he failed to move for dismissal of the charges pursuant to Crim.R. 29 upon the close of the state's case. In a Crim.R. 29 motion to dismiss, the defendant asserts that the state failed to present sufficient evidence to obtain a conviction.
As we discuss in detail below with respect to Jones' second assignment of error, the state presented evidence that was more than sufficient to sustain convictions for those offenses upon which the trial court returned guilty verdicts. Therefore, Jones' trial counsel could have reasonably believed that filing a motion to dismiss those charges would have been futile, thus, his performance was not deficient.
The trial court acquitted Jones on the remainder of the charges. Jones' trial counsel arguably should have filed a motion to dismiss those charges. However, because the trial court acquitted Jones and did not subject him to any conviction or sentence based upon those charges, Jones did not suffer any prejudice from his counsel's alleged error.
In sum, because Jones failed to demonstrate that his counsel performed deficiently and failed to demonstrate that he suffered any prejudice as a result of his counsel's performance, we find that Jones received effective assistance of counsel. Accordingly, we overrule his first assignment of error.
In his second assignment of error, Jones asserts that his convictions are against both the sufficiency and manifest weight of the evidence. In particular, Jones attacks the sufficiency of the evidence with regard to his convictions for involuntary manslaughter, aggravated robbery, and felonious assault at the Don's Quick Stop on February 20, 1997.
The Ohio Supreme Court clearly outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. [See, also, Jackson v. Virginia (1979), 443 U.S. 307.]
This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982),70 Ohio St.2d 79, 79-80; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
R.C. 2911.01 provides that a person commits aggravated robbery when, in the course of committing a theft offense, he displays or uses a deadly weapon or inflicts serious physical harm upon another. Similarly, R.C. 2911.02 provides that a person commits robbery when, in committing a theft offense, he has a deadly weapon under his control, he inflicts harm upon another, or he threatens to use force against another. Pursuant to R.C.2903.04, a person is guilty of involuntary manslaughter if he causes the death of another "as a proximate result of the offender's committing or attempting to commit" a crime. A person commits a felonious assault when he knowingly causes serious physical harm or attempts to cause serious physical harm to another with a deadly weapon. R.C. 2903.11.
A person who is associated with an enterprise and who indirectly or directly conducts or participates in that enterprise's affairs through a pattern of corrupt activity, violates R.C. 2923.32. Finally, pursuant to R.C. 2923.03, a person shall be prosecuted and punished as a principal offender if he possesses the requisite culpability for the principal offense and he solicits, aids, conspires with, or causes another to commit the offense.
In this case, the record contains testimony that Jones orchestrated and carried out the armed robberies at the Fast and Friendly store and at Stafford's Market. Thus, the record contains evidence going toward each essential element of the crimes Jones committed at the Fast and Friendly and at Stafford's Market. Additionally, while the record indicates that Jones was not present at Don's Quick Stop during the robbery, assault, and homicide there, the record contains testimony that Jones orchestrated that crime in the same manner, at the same location, with several of the same individuals, and with the same deadly weapons as those used in the Fast and Friendly and Stafford's Market robberies. Thus, the record contains evidence that Jones conspired with others to commit the offenses at Don's Quick Stop. Finally, the record contains evidence that Jones conducted and participated in the illegal affairs of the enterprise known as the Crips.
Upon reviewing the evidence in a light most favorable to the state, we find that a rational trier of fact could have found the essential elements of each crime proven beyond a reasonable doubt. Therefore, we find that the record contains sufficient evidence regarding each of the crimes for which Jones was sentenced.
Even when a verdict is supported by sufficient evidence, an appellate court may nevertheless conclude that the verdict is against the manifest weight of the evidence because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks (1992), 78 Ohio App.3d 206,214; Martin, supra, at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v.Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995), 103 Ohio App.3d 368,370-371; Martin, supra.
Upon review of the record, we find that the evidence overwhelmingly supports the trial court's conclusion that Jones committed the crimes at the Fast and Friendly, Stafford's Market, and Don's Quick Stop. In particular, we are persuaded by the testimony of former Crips members Armstrong and Johnson who personally witnessed Jones' participation in each crime. The trial court, as the trier of fact, was free to believe the testimony presented. We find that the trial court did not lose its way or create a manifest miscarriage of justice. Therefore, Jones' convictions are not contrary to the manifest weight of the evidence. Accordingly, we overrule Jones' second assignment of error.
In his third assignment of error, Jones asserts that the trial court erred in imposing the consecutive maximum sentences on each count. Specifically, Jones asserts that the trial court failed to follow R.C. 2929.12 and 2929.14(C). The state contends that the trial court made all necessary findings to impose consecutive maximum sentences.
R.C. 2953.08(A)(4) provides that a defendant who is convicted of a felony may pursue an appeal on the grounds that the sentence is contrary to law. The appellate court may modify the sentence upon clearly and convincingly finding that the sentence is not supported by the record, the sentence erroneously includes or excludes a prison term, or the sentence is contrary to law. R.C. 2953.08(G)(1)(a)-(d). In applying this standard of review, we do not substitute our judgment for that of the trial court. Rather, we look to the record to determine whether the sentencing court: (1) considered the statutory factors; (2) made the required findings; (3) relied on substantial evidence in the record supporting those findings; and (4) properly applied the statutory guidelines. State v. Persons (Apr. 26, 1999), Washington App. No. 98CA19, unreported, Griffin Katz, Ohio Felony Sentencing Law (1999) 542-547, Section 9.16-9.20.
In sentencing a felony offender, a trial court must impose a sentence that is reasonably calculated to achieve the two overriding purposes of felony sentencing, i.e., protecting the public from future crime by the offender and punishing the offender. R.C. 2929.11(A). To achieve these two purposes, it is within the court's discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12(A). However, the court must consider the factors set forth in R.C. 2929.12(B) and (C) relating to the seriousness of the offender's conduct, and those set forth in 2929.12(D) and (E) relating to the likelihood of the offender's recidivism. R.C. 2929.12(A).
Before imposing a maximum term of imprisonment, R.C.2929.14(C) requires the trial court to analyze the particular facts of the case and determine whether the offender's conduct constitutes one of the worst forms of the offense or whether the offender is one who poses the greatest likelihood of committing future crimes. State v. Spillman (Feb. 10, 1998), Franklin App. No. 97APA07-929, unreported. Likewise, before imposing consecutive terms of imprisonment, the trial court must find that consecutive service is necessary to protect the public from future crimes, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses, and that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct. R.C. 2929.14(E)(4)(b).
In this case, the trial court set forth its finding that Jones' conduct was more serious pursuant to R.C. 2929.12(B) because Jones committed the offense as part of an organized criminal activity. We find that substantial evidence in the record supports the trial court's conclusion, including evidence that Jones headed the Crips organization, held meetings, formed by-laws, a prayer, and a constitution to guide the Crips in their violent activities. The trial court found no evidence supporting the less serious factors of R.C. 2929.12(C), and Jones has not proposed that the trial court overlooked any evidence mitigating the seriousness of his conduct.
Additionally, the trial court found that Jones poses a high likelihood of recidivism pursuant to R.C. 2929.12(D) because Jones showed no remorse and because the evidence indicated that Jones was in the process of forming a team to commit bank robberies. Pursuant to R.C. 2929.12(E), the trial court recognized that Jones had no prior convictions. However, the court concluded that Jones' lack of remorse and plans for increasingly violent and dangerous crimes outweighed any factors suggesting that Jones was less prone to recidivism. We find that substantial evidence in the record supports the trial court's conclusions.
Finally, the trial court specifically set forth its extensive findings pursuant to R.C. 2929.14(C) and 2929.14(E) before imposing maximum consecutive sentences. The trial court listed evidence establishing that Jones committed the worst form of the offenses and poses the greatest threat of committing future crimes. Additionally, the trial court detailed the evidentiary support for its findings that consecutive terms are necessary to protect the public, that consecutive terms are not disproportionate to the seriousness of Jones' crimes, and that the harm Jones caused was so great and unusual that no single prison term would adequately reflect the seriousness of Jones' conduct.
We find that the trial court considered the statutory factors, made the required findings based upon substantial evidence in the record, and properly applied the statutory guidelines. The trial court did not err in imposing consecutive maximum sentences upon Jones. Accordingly, we overrule Jones' third assignment of error.
In his final assignment of error, Jones asserts that the trial court erred by failing to merge several of his convictions for the purpose of sentencing.
The double jeopardy protections of the federal and state constitutions bar cumulative punishments for the same offense.State v. Rance (1999), 85 Ohio St.3d 632, 634. However, if the legislature elects to permit cumulative punishments for one course of conduct that may constitute two crimes, it may do so without violating the constitutional protection against double jeopardy.Id. at 635, citing Ohio v. Johnson (1984), 467 U.S. 493, 499.
The Ohio General Assembly permits cumulative punishments as long as the offenses in question do not constitute allied offenses of similar import. R.C. 2941.25(B); see, also, Rance at 636. When the statutorily defined elements of two crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" State v. Jones (1997), 78 Ohio St.3d 12,13, quoting State v. Blankenship (1988), 38 Ohio St.3d 116,117. In engaging in this comparison, the court should examine the statutorily defined elements of the offenses in the abstract, not in the particular facts of the case before it.Rance at 638. If the offenses constitute allied offenses of similar import, the defendant cannot be convicted of both unless the defendant committed the crimes separately or with a separate animus. Rance at 639, citing R.C. 2941.25(B), and Jones, at 14.
Jones first asserts that the trial court should have merged his conviction for engaging in a pattern of corrupt activity with the offenses of aggravated robbery at the Fast and Friendly and Stafford's Market. Engaging in a pattern of corrupt activity requires employment or association with an enterprise and participation in the affairs of that enterprise through a pattern of corrupt activity. It does not require that the corrupt activity involve theft or the use of deadly weapons. R.C. 2923.32. In contrast, aggravated robbery requires theft and the use or possession of a deadly weapon. R.C. 2911.01. The elements of these crimes do not correspond to such a degree that the commission of one crime will result in the commission of the other.
Jones also asserts that the trial court should have merged his conviction for engaging in a pattern of corrupt activity with the offense of involuntary manslaughter. Involuntary manslaughter requires the death of another, but does not require proof of an enterprise or of a pattern of corrupt activity. See R.C. 2903.04. Likewise, the death of another is not a required element of engaging in a pattern of corrupt activity. See R.C. 2923.32. Thus, the elements of the crimes do not correspond to such a degree that the commission of one crime will result in the commission of the other.
Finally, Jones asserts that the trial court should not have imposed separate sentences for his aggravated robbery of the Fast and Friendly and his aggravated robbery of Fast and Friendly customer Chris Oliver. When a defendant commits aggravated robbery against different victims during the same course of conduct, a separate animus exists for each offense. State v. Byrd
(1987), 32 Ohio St.3d 79, 85. In Byrd, the court determined that the defendant demonstrated a separate animus with respect to a convenience store and the convenience store clerk when the defendant took money from the cash register and a wallet and jewelry from the clerk. In this case, Jones took cigarettes and money from the cash register at the Fast and Friendly and money that Oliver was carrying in his pocket. Thus, Jones possessed a separate animus as to each victim.
The trial court did not err in failing to merge the offenses outlined above. Accordingly, we overrule Jones' final assignment of error.
In conclusion, we find that Jones received effective assistance of counsel. Additionally, we find that sufficient evidence supports Jones' conviction and that his conviction is not against the manifest weight of the evidence. We further find that the trial court complied with the statutory guidelines and made and supported the findings necessary to impose cumulative maximum sentences upon Jones for the offenses he committed. Finally, we find that the trial court correctly determined which offenses to merge for sentencing.
Accordingly, we overrule Jones' four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
BOWMAN, P.J., and TYACK, J., concur.
KLINE, J., of the Fourth Appellate District, sitting by assignment under authority of Section 6(C), Article IV, Ohio Constitution.
[1] We note that none of these six alleged deficiencies pertains to the Fifth Amendment, and Jones does not mention theFifth Amendment in the body of his argument. However, Jones refers to the Fifth Amendment in his assignment of error. Because Jones failed to properly identify or argue any Fifth Amendment violation, we disregard that portion of his assignment of error pursuant to App.R. 12(A)(2).