JOURNAL ENTRY AND OPINION
Defendant-appellant JamesMcClain appeals from his convictions after a jury trial for aggravated murder with a firearm specification and having a weapon while under disability.
Appellant asserts his convictions should be reversed based upon his trial counsel's ineffective assistance in both failing to challenge identification testimony and failing either to have the weapons count tried to the bench or to request a limiting instruction on the introduction of evidence of appellant's prior conviction.
This court has reviewed the record in light of appellant's assertion. Appellant's claim of constitutionally ineffective assistance of trial counsel, however, finds no support therein; consequently, appellant's convictions are affirmed.
Appellant's convictions result from an incident that occurred on the night of August 1, 1999. At approximately 9:45 p.m. that Sunday, the victim, Orlando Martin, was shot to death.
The testimony of the state's witnesses indicated Martin both purchased and sold large quantities of cocaine. He possessed both a pager and a cellular telephone with which he arranged his transactions. On July 31, 1999 Martin delivered a bag[1] containing a hundred thousand dollars to his sister Makeba's home and requested her to hold it for him for safekeeping.
The following day, Martin arrived at Makeba's home in the early evening. He left shortly thereafter with Michael Kidd, who had been living with Makeba for eight years.
The two men rode around in Martin's vehicle for a few hours. During that time, Martin received pages and responded to them by means of his cellular telephone. Kidd heard Martin speak to one person he referred to as Phil or Fella. Kidd was aware Phil owned a record store located at East 55th Street and Superior Avenue. From Kidd's previous experience, moreover, Phil was Martin's drug supplier. Kidd noticed Phil identified himself on Martin's pager with the number 55. Martin eventually arranged to purchase four kilos of cocaine from Phil, then returned Kidd to Makeba's residence.
Before proceeding home, Martin retrieved the bag of money from his sister. At approximately 9:00 p.m., Martin's girlfriend, Yolanda Balden, observed him at their kitchen table counting out a lot of money from a bag. Martin had placed his pager and cellular telephone nearby. He was in the process of transferring the money into a department store shopping bag when Balden left their home approximately fifteen minutes later.
At approximately 9:45 p.m., Judy Lofton was watching television when she became aware a car had pulled up in front of [her] house. Lofton lived at 3583 East 138th Street between Union and Lambert Avenues. Lofton went to her front door to observe the vehicle and saw a man, later identified as Martin, seated in the driver's seat. Martin appeared to be relaxed as if he were waiting for [her] neighbor next door. A few moments later, she saw headlights as another vehicle pulled up behind Martin's.
At this same time, a group of young people was gathered on the sidewalk at the corner of East 138th Street and Lambert. One of the youngsters, fifteen-year-old John Cook, noticed the arrival of each vehicle.
Cook noticed the second vehicle was an older model gray [Oldsmobile] Ninety-Eight. As Cook watched, the second driver exited his vehicle and entered the passenger side of the first vehicle. Cook then heard a gunshot. Immediately thereafter, Martin fell out of his vehicle and attempted to run; however, the other man followed Martin, struck him in the head, and, as Martin lay in the street, fired more shots into him. As the assailant did so, he looked up to see the nearby crowd of youngsters.
Martin's assailant, at that point, attempted to take his victim's jewelry, but when the attempt proved unsuccessful, the assailant turned and pulled three department store bags from Martin's vehicle. The assailant then ran to the Oldsmobile, dropping one bag in his flight, threw the remaining bags inside and re-entered the driver's seat. As he placed the vehicle in gear, Cook and the other young people scattered.
The assailant, however, remained in the area. Cook had just emerged from hiding near a friend's home on East 139th Street when he saw the gray Oldsmobile travel down the street toward him. The driver, whom Cook later identified as appellant, took aim at the young man as the vehicle came near and pulled the trigger of the gun. Cook heard the click as the firing pin hit an empty chamber before he again fled.
Within moments of the shooting, some of the residents of the houses on East 138th Street had formed a crowd near Martin. Police officers and paramedics arrived. Although Martin was transported to the hospital, he died before arrival from four gunshot wounds to his head and trunk.
Police investigators gathered evidence at the scene and spoke to many of the persons present there but found no one who would admit having witnessed the shooting. However, since Martin carried identification, Gregory King, the detective assigned to the case, soon contacted Martin's family and friends. They provided King with Martin's pager, his telephone and his connection to Phil. Further inquiry concerning this person eventually indicated that appellant was the owner of the record store on East 55th Street and was known to drive a gray Oldsmobile Ninety-Eight.
Records subsequently obtained by King from the communications companies serving both Martin and appellant, moreover, indicated Martin had been in contact with appellant often, especially on the night of the shooting. After a final call to Martin's pager at 9:24 p.m., however, appellant ceased any further attempt to contact Martin.
Eventually, in November 1999, King's investigation of the shooting led him to John Cook. Although Cook initially was reluctant to become involved, King provided a photographic array to Cook. When King asked if Cook observed anyone who looked familiar, Cook chose appellant's photograph and identified him as Martin's assailant. Appellant subsequently was indicted on two counts, viz., aggravated murder, R.C.2903.01(A) with a firearm specification, and having a weapon while under disability, R.C. 2923.13. The second count referred to appellant's previous conviction for the crime of drug trafficking. Appellant pleaded not guilty to the indictment and retained counsel to represent him.
The record reflects defense counsel filed the customary pretrial motions on appellant's behalf. These motions included one to inspect any and all photos, slides and other items used by law enforcement officers * * * during identification procedure. The purpose of the motion was to determine whether the State's eyewitness identification testimony is so tainted as to require suppression. Defense counsel initially also sought to exclude during trial any references to appellant's earlier conviction. The record reflects the state thereafter complied with all of appellant's discovery requests. Appellant subsequently filed a timely notice of alibi.
Appellant's case proceeded to a jury trial. The state presented the testimony of numerous witnesses. These included Martin's sister, Martin's girlfriend, Kidd, Det. King, the forensics examiners, some of appellant's acquaintances, and John Cook. The state also introduced into evidence, inter alia, photographs taken at the scene of the murder and telephone and pager records for Martin and appellant. Appellant stipulated to the admissibility of the journal entry of his previous conviction.
In his defense, appellant presented the testimony of his grandmother. She stated her belief appellant was celebrating the birthday of a family friend at her house at the time of the murder. Appellant's grandmother admitted, however, that appellant had not been present the entire evening and that she had not informed Det. King of this party during his interview of her.
The jury subsequently found appellant guilty of the charges against him. The trial court sentenced appellant as follows: three years on the firearm specification, to be served prior to and consecutive with twenty years to life on count one and prior to and consecutive with one year on count two, the counts to run consecutively with each other.[2]
Appellant has filed a timely appeal of his convictions. He presents the following assignment of error for review:
 THE TRIAL COUNSEL WAS INEFFECTIVE WITHIN THE MEANING OF THE SIX (SIC) AMENDMENT TO THE CONSTITUTION IN THE FOLLOWING WAYS WHICH INDEPENDENTLY AND COMBINED DENIED APPELLANT A FAIR TRIAL:
 1. FAILURE TO FILE A MOTION TO SUPPRESS OUT-OF-COURT PHOTO-ARRAY IDENTIFICATION AND IN-COURT IDENTIFICATION; AND
 2. FAILURE TO WAIVE A JURY TRIAL ON THE HAVING A WEAPON WHILE UNDER DISABILITY CHARGE SO THAT THE JURY WOULD NOT LEARN THAT APPELLANT HAD BEEN CONVICTED OF DRUG TRAFFICKING OR IN THE ALTERNATIVE REQUEST A LIMITING CAUTIONARY JURY INSTRUCTION REGARDING APPELLANT'S PRIOR CONVICTION.
Appellant argues the attorney he chose to represent him during the proceedings below rendered assistance so constitutionally ineffective as to mandate reversal of his convictions. Appellant asserts the circumstances required the filing of a motion to suppress Cook's identification of him as Martin's assailant. Appellant further asserts counsel's omission in permitting the introduction of evidence of appellant's previous conviction to go unchallenged is unjustified. This court disagrees.
The claim of ineffective assistance of trial counsel requires proof that counsel's performance has fallen below an objective standard of reasonable representation and, in addition, that prejudice has arisen from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, syllabus 2; see, also, State v. Lytle (1976), 48 Ohio St.2d 391. The establishment of prejudice requires proof that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. State v. Bradley, supra, syllabus 3.
The burden is on appellant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id.; see, also, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id.
The record in this case with regard to trial counsel's actions fails to demonstrate counsel's performance fell below an objective standard of reasonableness.
Initially, this court notes defense counsel is not required to file a motion to suppress in every case. State v. Flors (1987),38 Ohio App.3d 133, headnote 2.
Regarding pretrial identification procedures, moreover, the Ohio Supreme Court has stated as follows:
 When a witness had been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. State v. Waddy (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819, 830-831, citing Manson v. Brathwaite (1977), 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155, and Neil v. Biggers (1972), 409 U.S. 188, 196-198, 93 S.Ct. 375, 381-382, 34 L.Ed.2d 401, 410-411. However, no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime. Coleman v. Alabama (1970), 399 U.S. 1, 5-6, 90 S.Ct. 1999, 2001, 26 L.Ed.2d 387, 394.
State v. Davis (1996), 76 Ohio St.3d 107 at 112. (Emphasis added.)
The supreme court, therefore, has stressed that the focus of an inquiry into the matter must be primarily upon reliability rather than merely upon the identification procedure. State v. Williams (1995),73 Ohio St.3d 153, at 164, citing State v. Jells (1990), 53 Ohio St.3d 22,27. Furthermore, it is defendant's burden to show that the identification procedures were unnecessarily suggestive and that the witness's in-court identification was unreliable under the totality of the circumstances. State v. Sims (1984), 13 Ohio App.3d 287 at 288. Even suggestive identification procedures, however, do not preclude admission where the identification, itself, is determined to be reliable. State v. Davis, supra; State v. Keith (1997), 79 Ohio St.3d 514, 523; State v. Moody (1978), 55 Ohio St.2d 64.
 In determining whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive * * * the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers (1972), 409 U.S. 188, 199, 93 S.Ct.
375, 382, 34 L.Ed.2d 401, 411. State v. Keith, supra.
In this case, although appellant hints the identification procedure was suggestive merely because Cook expected the photographic array would contain the murder suspect, this is an insufficient basis upon which to base such a conclusion. State v. Saddler(Apr. 16, 1998), Cuyahoga App. No. 71747, unreported; State v. Rawls (Apr. 30, 1998), Cuyahoga App. No. 72051, unreported. Moreover, a review of the photographic array fails to indicate appellant's picture is unnatural and thus distinctive. State v. Williams, supra; State v. Saddler, supra; State v. Jones (July 2, 1992), Cuyahoga App. No. 60106, unreported.
In any event, a review of the totality of the circumstances reveals Cook's identification of appellant was reliable. State v. Waddy (1992),63 Ohio St.3d 424 at 439. Cook twice had a clear view of appellant's face from a relatively short distance away. In addition, appellant's action after the murder toward Cook in pointing the murder weapon and pulling its trigger was a memorable event that frightened Cook even three months later.
Although the length of time between the incident and the confrontation was attenuated, Det. King testified Cook chose appellant's photograph from the array without hesitation. Moreover, Cook was very positive in his identification of appellant.
Since the record reveals Cook's identification of appellant was neither the result of an impermissibly suggestive confrontation nor unreliable, counsel had neither a justification nor a duty to file a motion to suppress that evidence. State v. Flors, supra; State v. Gibson (1980),69 Ohio App.2d 91, 95; State v. Sanders (Dec. 10, 1996), Pickaway App. No. 95CA6, unreported. Indeed, counsel chose instead to thoroughly cross-examine both Cook and King in order to elicit their admissions that Cook failed to provide an accurate description of appellant in spite of his pretrial identification of appellant as the murderer. This effort was within the ambit of reasonable trial strategy. Id.
Similarly, although appellant challenges counsel's effectiveness based upon counsel's allowing proof of appellant's prior conviction to be presented to the jury without any restriction, a review of the record demonstrates this was a calculated tactical decision. Counsel obviously realized proof of appellant's prior conviction was an essential element of R.C. 2923.13; therefore, its introduction was inevitable. Counsel chose to use the existence of that single offense to remind the jury as he cross-examined the state's witnesses both that appellant had absolutely no history of violent physical crimes and that the state could neither produce the murder weapon nor prove appellant possessed a weapon.
In the face of the overwhelming evidence of appellant's guilt in this case, counsel cannot be faulted for adopting this strategy. See, e.g., State v. Braxton (1995), 102 Ohio App.3d 28.
The record reflects trial counsel was fully prepared, diligent and throughly capable in his representation of appellant; therefore, appellant cannot sustain his burden to prove counsel provided constitutionally ineffective assistance. State v. Bradley, supra.
Accordingly, appellant's assignment of error is overruled.
Appellant's convictions are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________________ KENNETH A. ROCCO, PRESIDING JUDGE
JAMES D. SWEENEY, J. and MICHAEL J. CORRIGAN, J. CONCUR.
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] In spite of the duty imposed by R.C. 2949.08(B), the trial court further ordered the sheriff to calculate jail time credit and remit to institution.