THE STATE OF OHIO, APPELLEE, *v.* CURTIS ET AL., APPELLANTS.

(No. 618—Decided March 3, 1965.)

*Mr. James H. DeWeese*, prosecuting attorney, for appellee.
*Mr. Leo H. Faust*, for appellants.

CRAWFORD, J. Defendants, appellants herein, were convicted of larceny by trick; Curtis was extended probation, Braun was sentenced. Both have appealed.

The indictment charged that on or about the (amended date) 5th day of November, 1962, the defendants did by prearrangement and by false and fraudulent representations or writings obtain possession of three hundred dollars of Braun & Co. with the consent of said company.

Braun & Co., previously known as Braun Brothers, was a corporation engaged in the packing business. Another corporation, variously referred to as the Curtis Trucking Co., etc., was engaged in the business of transporting livestock by truck and as a common carrier. Both companies were located in Troy, Ohio. The defendants were employees, each with considerable authority, in the respective corporations which bear names similar to their own.

About October 26, 1962, defendant Braun on behalf of Braun & Co., dealing through defendant Curtis as representative of the Curtis Trucking Co., employed the latter company to send a truck to Jewel, Iowa, to pick up a load of hogs to be hauled to the Braun & Co. packing plant in Troy.

No hogs were purchased and none were brought to Troy. However, twenty-five calves or feeder cattle, purchased by and belonging to defendant Braun, were brought back and delivered to the farm of the defendant Braun near Troy. These calves occupied approximately one-fifth of the total capacity of the truck which was otherwise empty. Braun & Co. paid the Curtis Trucking Co. its minimum charge of three hundred dollars for the trip. Defendant Braun paid nothing to either company for the hauling of his calves.

Braun testified that the reason no hogs were purchased was that after the truck was dispatched from Troy to Iowa the available supply of hogs in Iowa suddenly declined with a corresponding sharp increase in price, so that it became cheaper to return the truck empty or ''dead head,'' than to purchase the hogs. The record contains neither corroboration nor denial of Braun's account of this market phenomenon.

Curtis, upon the instructions of Braun, made out a bill for the Curtis Trucking Co. to Braun & Co. for the minimum charge of three hundred dollars. The bill made no mention of the

calves. However, it did purport to be a charge for transporting two loads of hogs from two points in Indiana.

The two defendants occupied such positions and exercised such authority in their respective corporations as practically to assure the payment of the bill. The record leaves little doubt that the bill would have been paid had it shown that no livestock whatsoever was hauled from Iowa, or even if it had shown the hauling of Braun's calves alone. Various reasons or excuses were given for the false information contained in the bill. It seems likely that, if it had come to the attention of the other officials of Braun & Co., that Braun's calves had been transported, he would have been required to reimburse that company for such service, but that the bill of the Curtis Trucking Co. would have been paid by Braun & Co.

The defendants followed a deceptive method of doing business. No one condones the procedure from a moral point of view. The question is, Did they violate the statute by committing the offense charged in the indictment? The offense of larceny by trick is defined by this provision of Section 2907.21, Revised Code:

"No person shall obtain possession of, or title to, anything of value with the consent of the person from whom he obtained it, provided he induced such consent by a false or fraudulent representation, pretense, token, or writing."

In the case of *State* v. *Healy,* 156 Ohio St. 229, the Supreme Court first had occasion to construe this statute. It was there held in the third paragraph of the syllabus that the trial court correctly charged the jury "that to find the defendant guilty as charged they must be convinced beyond a reasonable doubt that he obtained possession of property of value from another, with the consent of such other person, that he obtained it by means of false or fraudulent representation and that such false or fraudulent representation was the inducement which led the person, from whom the property was taken, to deliver it to the defendant * * *."

Some of these necessary elements of the crime charged are missing in the present case. Neither of the defendants obtained title to or possession of the three hundred dollars. The Curtis Trucking Co. did obtain it, but, as conceded by counsel for the state, it was lawfully entitled thereto. Therefore, no

crime was committed by it or through it, and the defendants cannot be held as aiders and abettors to any wrongful act on its part. The falsity of the bill presented was not the means of obtaining title or possession; it was not the inducement which led Braun & Co. to deliver or pay out the money; nor was the money paid to the defendants or to either of them.

The state further admits that the defendant Curtis derived no profit from the transaction. He was merely cultivating good will with the contact man for his trucking company's corporate customer.

Perhaps the defendant Braun did derive a benefit from the falsification, because he was never called upon to reimburse Braun & Co. for the hauling of his calves, and the falsification of the bill rendered it less likely that he would ever be called upon to do so. By contriving the inclusion of the false information in the Curtis Trucking Co.'s bill, he concealed his failure to reimburse his company; but this did not constitute larceny by trick as contemplated in the statute or as charged in the indictment.

This disposes of the first four assignments of error. The fifth assignment is directed to the sentencing of the defendant Braun. Both defendants had waived trial by jury and elected to be tried by a three-judge court as provided in Section 2945.07, Revised Code. The three members of the panel were unanimous in finding both defendants guilty. But the presiding judge dissented from the others in the matter of sentencing the defendant Braun, believing that he should have been extended probation. One of the other two judges presided at this point and pronounced the sentence.

It is contended that the three-judge court exhausted its jurisdiction before sentence, and that the presiding judge alone could impose sentence or extend probation. We find no merit in this contention. We apprehend that the defendant Braun would share our view if the same majority had favored probation and the presiding judge had not.

Section 2945.07, Revised Code, contains this provision:

"* * * If tried by a three-judge court, such judges or a majority of them may decide all questions of fact and law arising upon the trial and render judgment accordingly. * * *"

Defendant Braun seeks to make a fine distinction between

judgment and sentence. Throughout Chapter 2947, Revised Code, which deals directly with these terms, there is no such distinction. It uses the two words synonymously, the chapter being entitled ''Judgment; sentence.''

Section 2947.05, Revised Code, uses the terms ''sentence'' and ''judgment'' interchangeably. It reads:

''Before sentence is pronounced, the defendant must be informed by the court of the verdict of the jury, or the finding of the court, and asked whether he has anything to say as to why judgment should not be pronounced against him.''

Section 2947.07, Revised Code, authorizes the ''court'' to ''pronounce the judgment.''

It has been decided by this court, and it appears well established, that the sentence in a criminal case is the judgment. The fact that the question often arises in determining the proper time for appeal does not render this positive statement less valid for general purposes. *State* v. *Burton,* 30 Ohio Law Abs. 165; *State* v. *Griffin,* 63 Ohio Law Abs. 118. In *Dillon* v. *State,* 38 Ohio St. 586, the Supreme Court states the principle inferentially when it speaks of ''a judgment imposing a * * * fine or imprisonment * * *.'' See, also, 2 Ohio Jurisprudence 2d 604, Appellate Review, Section 35.

The court in such a case as this is defined and constituted under Section 2945.07, Revised Code, as a three-judge court, a majority of whom may, among other things, render judgment. Their duties are not fully discharged until they or a majority of them do so by pronouncing judgment or sentence.

It is argued that Section 2951.02, Revised Code, empowers ''the judge or magistrate,'' not the judges, to extend probation. Defendant contends that in the case of a three-judge court ''the judge'' is the presiding judge only. We find no authority or logic for excluding the other two. This section (2951.02, Revised Code) being of general application, the word ''judge'' must be construed in a representative sense to include all members of a multiple court. What one judge can do, all three can do. It surely was never intended by the use of the singular that a three-judge court should be without power to extend probation or impose sentence inasmuch as they are specifically authorized by Section 2945.07, Revised Code, to render judgment.

It is also urged that it was an abuse of discretion to deny probation. The court has wide discretion to grant or withhold probation, which is a matter of grace and not of right. Section 2951.02, Revised Code; *State* v. *Weed,* 110 Ohio App. 186. It appears from the record that the defendant Braun had pleaded guilty to several other serious felonies, and there is evidence that conduct similar to that disclosed here had been previously indulged in by him. Had his conviction here not been erroneous, the withholding of probation could not be held to be an abuse of discretion.

Whatever may be said of the conduct of the defendants in this case, it did not constitute larceny by trick, nor guilt under the charge as framed.

The judgment must be, and hereby is, reversed.

*Judgment reversed.*

Sherer, P. J., and Kerns, J., concur.