THE STATE OF OHIO, APPELLEE, *v.* FLORS, APPELLANT.

134

(Nos. 52056 and 52057—Decided April 27, 1987.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Charles W. Lazzaro,* for appellant.

MARKUS, C.J. The defendant appeals from his jury trial convictions for bribery, falsification, and tampering with public records. His seven assigned errors challenge the sufficiency of the evidence, the court's sentence, the conduct of the court, the prosecutor, and his own counsel.[1]

The evidence did not support his convictions for falsifying and tampering with public records, so we discharge him for those offenses. We also agree that parts of the sentences were inappropriate or require reconsideration. His remaining contentions lack merit. Therefore, we affirm the bribery conviction but remand it for resentencing.

## I

The state charged that the defendant offered and paid a bribe to obtain favorable treatment for his pending misdemeanor citations. The prosecution also claimed that he aided or abetted codefendants George J. Novicky and Harry Darmour to falsify or tamper with records for that purpose.

Novicky was a Parma Municipal Court judge, and Darmour was his friend. In the defendant's separate trial, the events were largely undisputed. The defendant acknowledged most of them in his testimony. However, he denied (a) that he intended to bribe anyone, and (b) that he had any involvement in the alleged falsification and tampering.

The Parma police cited the defendant for an improper right turn, failure to display a driver's license, possession of marijuana, and driving while intoxicated. Shortly thereafter, the defendant called a friend to ask if the friend knew someone who could help him with those citations. The friend said that his own lawyer had died, but he would ask others. An acquaintance gave him the telephone number of someone who might help, and he reported it to the defendant without knowing whose number it was.

The defendant called that number and spoke to an unknown man, whom he later identified as codefendant Darmour. He gave Darmour his own name and telephone number and explained his problem. Darmour called him back to arrange a Saturday meeting at a local restaurant. Three FBI agents were watching the restaurant that Saturday and saw Darmour and Novicky arrive in a car and enter the restaurant together.

Two agents saw Darmour and Novicky sit at a restaurant table until the defendant entered. Darmour then left Novicky and sat with the defendant. A few minutes later, Novicky departed without saying anything to Darmour. Darmour asked to see the defendant's citations, inquired about any prior offenses, and told him: "This doesn't seem so bad. Don't worry about it." The defendant gave Darmour his driver's license. After a twenty-minute conversation, Darmour and the defendant left the restaurant. Darmour joined Novicky who was waiting to

---

[1] The seven assignments of error appear in the Appendix.

drive away. At that time, the defendant knew Darmour only by his first name.

That afternoon, Darmour telephoned the defendant to tell him not to appear at court on the originally scheduled trial date. The defendant went anyway, but left when the desk sergeant told him that his case was not listed that day. Novicky wrote on the citation that the defendant appeared and pled "not guilty." There was no evidence that the defendant knew Novicky was going to do that or had done it. Two days later, Darmour called the defendant again to arrange a meeting at another restaurant.

At this meeting, Darmour returned the defendant's license wrapped in a napkin, and said he would get a new court date. Darmour told him he could choose either reckless operation or "physical control" as a reduced charge. The defendant chose the latter offense because it imposed no points on his license. Though he still did not know Darmour's last name or whether he was a lawyer, the defendant agreed to have Darmour represent him. In fact, Darmour was not a lawyer. Darmour told him that the fine and costs would be approximately $200, and wrote $500 on a napkin, saying: "This will be my fee."

Darmour called the defendant once more and gave him a new court date. On that morning, Novicky summoned an assistant prosecutor and told him how he wanted the defendant's case resolved. The prosecutor did not have his file available because the case was not scheduled for that day. At Novicky's direction, the prosecutor noted his recommendation that the driving while intoxicated charge be reduced to "physical control" and the remaining charges be dismissed.

On the Parma court records for the defendant's case, "white out" correction fluid covered the space for the assigned judge, and someone stamped Novicky's name there. There was no evidence whether Novicky was the properly assigned judge for the defendant's case. Thus, there was no evidence whether the change altered the record from the proper assignment, rather than to the proper assignment. Further, there was no evidence that the defendant knew anything about those records, or that another judge might have decided his case.

In anticipation of his court appearance, the defendant borrowed $700 from another friend. He met Darmour at the court where they both entered codefendant Novicky's chambers. In Novicky's chambers, the defendant pled "no contest" to "physical control." Novicky found him guilty and fined him $150 plus costs, with the costs suspended. Novicky's sentence required the defendant to attend a school for alcoholic drivers and placed him on non-reporting probation for one year.

The defendant paid his fine and reported briefly to the probation department. As he left there, he found Darmour waiting for him in the hallway. He gave Darmour $500, and Darmour wrote his phone number on the back of the defendant's probation card.

Six months later, two police officers came to the defendant's home to speak with him about these events. At their request he accompanied them in their car to a vacant lot, where they advised him of his constitutional rights. They then drove him to police headquarters, and thereafter to a motel, where he gave an extended oral statement which the police recorded. Two weeks later, the prosecutor summoned the defendant to a grand jury session, where he listened to the recorded statement and confirmed its accuracy. The transcript of that statement covers eighty pages.

The grand jury subsequently in-

dicted the defendant for the presently contested charges, and the police arrested him on those charges.

## II

The defendant's first assignment contests the sufficiency and adequacy of the evidence for his convictions of bribery, falsification, and tampering with records. In pertinent part, the following statutes define the applicable forms of those offenses:

R.C. 2913.42 (tampering with records):

"(A) No person, knowing he has no privilege to do so, and with purpose to defraud or knowing that he is facilitating a fraud, shall do any of the following:

"(1) Falsify, * * * alter, deface, or mutilate any writing, data, or record[.]
"* * *

"(C)(1) Whoever violates this section is guilty of tampering with records.

"[2](b) If the writing or record is a * * * record kept by or belonging to a governmental agency, [tampering with records is] a felony of the fourth degree."

R.C. 2921.02 (bribery):

"(A) No person, with purpose to corrupt a public servant * * * or improperly to influence him with respect to the discharge of his duty, * * * shall promise, offer, or give any valuable thing or valuable benefit."

R.C. 2921.13 (falsification):

"(A) No person shall knowingly make a false statement * * * when any of the following apply:

"(1) The statement is made in any official proceeding.
"* * *

"(7) The statement is in writing on or in connection with a report or return which is required or authorized by law."

The defendant argues that the trial court should have granted his motion for an acquittal on each of the charges. The court should deny that motion for an offense if reasonable jurors could find that the state proved its elements beyond a reasonable doubt. Crim. R. 29(A); *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184, syllabus. In considering that motion, the court should view the evidence in the light most favorable to the state. *Id.* at 263-264, 9 O.O. 3d at 402, 381 N.E. 2d at 185-186.

The court properly denied the defendant's motion for an acquittal on the bribery charge. He promised to pay and did pay Darmour $500 to obtain a favorable disposition for his pending misdemeanor charges. The jury could reasonably find that he acted "with purpose to corrupt a public servant * * * or improperly to influence him with respect to the discharge of his duty." R.C. 2921.02. The state had no burden to show which public official the defendant sought to influence. The defendant could commit bribery even if he did not know which official would respond or whether that person would receive any part of the payment. Cf. *State* v. *Kimble* (Apr. 26, 1979), Cuyahoga App. No. 38407, unreported (killing with prior calculation and design is aggravated murder, even though defendant planned to kill *any* black person).

The state could show the defendant's purpose from his conduct before and after the offense, the means he used, and other facts and circumstances. *State* v. *Huffman* (1936), 131 Ohio St. 27, 1 N.E. 2d 313, paragraphs four and seven of the syllabus; *State* v. *Cartellone* (1981), 3 Ohio App. 3d 145, 148, 3 OBR 163, 166, 444 N.E. 2d 68, 72. He asserts that he paid Darmour to represent him. However, his dealings with Darmour evidenced a purpose to obtain special treatment by non-legal means.

Instead of hiring a lawyer or acting without counsel, he contacted an unidentified friend of a friend. He dealt

with that man when he could only learn the man's first name. He responded to the man's directions for impromptu meetings at restaurants, rather than an office. The man assured him that he had nothing to worry about and advised him to disregard his scheduled trial date. The man returned his license secretively and quoted a fee secretively.

The defendant said the man told him, "we're going to take care of it." He knew, "this guy's doing something for me." The man gave him a choice of the ultimate charge, which the judge later presented for his plea. The judge told him, "fortunately for you you knew — you know the right people," and nodded toward Darmour when he reduced the charge. Thereafter, the defendant was surprised to find Darmour outside the probation office because he thought the payment would be more clandestine. He believed that someone else had to be paid out of that money.

Thus, the court had no reason to dismiss the bribery charge. Substantial competent, credible evidence supported that conviction. Hence, it is not contrary to the manifest weight of the evidence. Cf. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 82, 10 OBR 408, 412, 461 N.E. 2d 1273, 1278.

By contrast, the state failed to present any evidence to support the defendant's convictions for falsification or tampering with records. There was no evidence that he participated in (a) the false entry about his appearance on the first court date or (b) the modification of records to show that his case was assigned to Novicky.

The state contended that he was guilty of those offenses by his complicity with Darmour or Novicky in committing them. See R.C. 2923.03. However, there was no evidence that he aided or abetted anyone to commit the allegedly culpable acts. Cf. *State* v. *Woods* (1983), 13 Ohio App. 3d 49, 51,

13 OBR 53, 54, 468 N.E. 2d 121, 124. Nor was there any showing that those acts were the natural and probable consequence of his purpose to influence the disposition of his citations. Cf. *State* v. *Scott* (1980), 61 Ohio St. 2d 155, 165, 15 O.O. 3d 182, 189, 400 N.E. 2d 375, 382; *State* v. *Flenoy* (June 9, 1983), Cuyahoga App. No. 45305, unreported.

There was no evidence that he had reason to anticipate those acts. There was no showing that he knew they were helpful to his case or that they had been done. Hence, he was not guilty of complicity in those alleged offenses.

The defendant's first assigned error has merit for the falsification and tampering charges, so we reverse those convictions and dismiss those charges. It lacks merit for the bribery conviction.

### III

The defendant's second, third, and seventh assignments assert numerous complaints about the conduct of the prosecutor, the court, and his own trial counsel.

He complains that the prosecutor (a) introduced hearsay, (b) presented irrelevant evidence, (c) used leading or argumentative questions and a prior statement to examine his own witnesses, (d) impugned defense counsel's integrity, and (e) failed to provide defense counsel with a copy of the state's proposed jury instructions. He also complains that the court overruled defense objections to many of these acts.

He cites five instances of supposed hearsay, most of which involved testimony by the defendant's friend, who recounted the defendant's earlier statements. By definition, testimony about the defendant's prior statements is not hearsay when offered by the state, regardless of the defendant's in-

terests when he made them. Evid. R. 801(D)(2)(a).

When the witness recited the defendant's statement about someone else's *comment,* the state did not seek to show that the *comment* asserted any facts accurately. Instead, the state offered that evidence to show that the defendant relied on that comment, regardless of its truth, or to show the speaker's state of mind. Hence, they were not hearsay or were admissible as an exception to the hearsay bar. Evid. R. 801(C); 803(3).

The defendant argues that some of the evidence could have served an impermissible purpose, to prove facts asserted in extrajudicial statements. If so, the defendant should have requested a limiting instruction, to preclude its use for that impermissible purpose. Evid. R. 105; *State* v. *Norman* (1982), 7 Ohio App. 3d 17, 21, 7 OBR 19, 23, 453 N.E. 2d 1257, 1261.

Most of the supposedly irrelevant evidence concerned codefendant Darmour. It showed his employment by the common pleas court, his lack of authority to practice law, his telephone number, and his handwriting. This evidence tended to explain Darmour's involvement in the described events and his familiarity with court procedures, even though he was not a lawyer. While some of this evidence had little probative value, it had no significant prejudicial effect.

The defendant also complains that the prosecutor used police photographs and fingerprint cards to identify Novicky and Darmour. Here again, the evidence had minimal probative value. It likewise had minimal prejudicial effect, since each item showed that the police prepared it after they had arrested Novicky and Darmour for these offenses. Cf. *State* v. *Breedlove* (1971), 26 Ohio St. 2d 178, 182, 55 O.O. 2d 441, 443, 271 N.E. 2d 238, 240; *State* v. *Lancaster* (1971), 25 Ohio St.

2d 83, 91-92, 54 O.O. 2d 222, 226-227, 267 N.E. 2d 291, 297.

The court did not abuse its discretion by receiving any of the challenged evidence. The danger of any unfair prejudice from that evidence did not substantially outweigh its probative value. Evid. R. 403(A).

The complaints about the prosecutor's examination of his own witnesses are equally groundless. The court could properly permit the prosecutor to use leading questions to examine the defendant's friends. Evid. R. 611(C); *State* v. *Stearns* (1982), 7 Ohio App. 3d 11, 13-14, 7 OBR 12, 15, 454 N.E. 2d 139, 142-143. The state could impeach its own witnesses, so long as it did not use a prior inconsistent statement. Evid. R. 607; *State* v. *Stearns, supra,* at 14, 7 OBR at 16, 454 N.E. 2d at 143. It properly used a prior statement to refresh a witness's recollection, which then conformed to that statement. *State* v. *Stearns, supra,* at 16, 7 OBR at 17-18, 454 N.E. 2d at 145.

In general, the court did not abuse its discretion in exercising control over the state's mode of examining its own witnesses. Evid. R. 611(A); cf. *State* v. *Shields* (1984), 15 Ohio App. 3d 112, 114, 15 OBR 202, 204, 472 N.E. 2d 1110, 1113.

The defendant contests the court's rulings on motions which concerned the indictment. He argues that the court should have required the state to specify which Parma official he bribed or sought to corrupt. However, the state had no duty to prove which official he intended to influence, or whether he knew which official would respond to his bribe. See R.C. 2921.02(A).

He also challenges the ruling which permitted the state to amend the indictment by supplementing its description of Darmour's employment. The amendment did not change the nature or the identity of the offense charged.

See Crim. R. 7(D). Since Darmour's employment was not an element of the offense, the amendment was harmless surplusage. The indictment and the bill of particulars adequately advised the defendant about the nature of the charge. Cf. *State* v. *Walton* (June 9, 1983), Cuyahoga App. Nos. 44479 and 45223, unreported.

The defendant complains that the prosecutor failed to supply defense counsel with the state's proposed jury instructions. He did not request a copy of those proposed jury instructions or object to the prosecutor's omission when the prosecutor discussed them in open court before the final arguments. Therefore, he waived any objection to this procedural error.

We agree with the defense that the prosecutor acted improperly when he falsely suggested that defendant's counsel directed the defendant not to cooperate with the police in order to protect codefendant Novicky. However, that action did not deprive the defendant of a fair trial and would not justify a reversal. Cf. *State* v. *Martin* (1986), 21 Ohio St. 3d 91, 95-96, 21 OBR 386, 390, 488 N.E. 2d 166, 169-170.

Finally, the defendant complains that his trial counsel denied him effective assistance. He contends that his trial counsel should have pursued a motion to suppress his recorded statement. To prevail on this claim, he must demonstrate that his counsel violated an essential duty or provided objectively unreasonable representation. See *Strickland* v. *Washington* (1984), 466 U.S. 668, 688, 694; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397, 2 O.O. 3d 495, 498, 358 N.E. 2d 623, 627. The Sixth Amendment does not require defense counsel to file suppression motions in every case. *Kimmelman* v. *Morrison* (1986), 477 U.S. 365, 385-386; *State* v. *Lytle, supra.*

There was no meaningful evidence that the police used duress, threats, or promises to obtain the defendant's statement. The statement itself shows that the police advised him of his constitutional rights, before he willingly chose to discuss the matter at great length. Hence, he has not shown that the court should have suppressed the statement. Cf. *Lego* v. *Twomey* (1972), 404 U.S. 477, 485-489; *State* v. *Tyes* (May 12, 1983), Cuyahoga App. No. 45323, unreported.

In fact, defendant's trial counsel obtained leave to file a tardy motion to suppress the statement, but withdrew that request after reconsidering his strategy. He could well have decided that the motion was futile. Cf. *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 174, 20 OBR 215, 218, 485 N.E. 2d 717, 719-720.

The defendant also complains about his trial counsel's cross-examination of a witness, his failure to call character witnesses, and the scope of his final argument. These are largely matters of trial strategy, which do not demonstrate ineffective assistance. Cf. *State* v. *Clayton* (1980), 62 Ohio St. 2d 45, 49, 16 O.O. 3d 35, 37, 402 N.E. 2d 1189, 1192; *State* v. *Johnson* (Mar. 6, 1986), Cuyahoga App. No. 50288, unreported.

We overrule the second, third, and seventh claimed errors.

IV

The defendant's fourth, fifth, and sixth assigned errors contest the sentences which the trial court imposed for the three convictions. Since we reverse the convictions for falsification and tampering, we address his challenges to those sentences solely to satisfy our responsibilities under App. R. 12(A).

His fourth assignment objects to the order that his misdemeanor sentence for falsification will run consecutive to his sentences for the two

felony convictions. He correctly asserts that R.C. 2929.41(A) directs that those prison sentences must be concurrent. Consequently, if we did not reverse his falsification sentence, we would modify the sentence for that offense to run concurrently with any remaining felony sentence.

His fifth assignment contends that the court abused its discretion by imposing maximum consecutive sentences for all the convictions without any apparent justification. We reject his argument that the court was required to grant him probation. The trial court has broad discretion whether to grant or deny probation for probationable offenses. See *State* v. *Curtis* (1965), 2 Ohio App. 2d 31, 36, 31 O.O. 2d 72, 75, 206 N.E. 2d 217, 220; *State* v. *Thornton* (Feb. 9, 1984), Cuyahoga App. No. 46986, unreported.

On the other hand, the trial court has a duty to consider the statutory aggravating and mitigating factors when it sentences an offender. See R.C. 2929.12 (for indefinite felony sentences), R.C. 2929.13 (for definite felony sentences), R.C. 2929.22 (for misdemeanor sentences); see, also, *Cleveland* v. *Egeland* (1986), 26 Ohio App. 3d 83, 90, 26 OBR 259, 264-265, 497 N.E. 2d 1383, 1391. Ordinarily, the court need not explain its reasons when it exercises its discretion in sentencing an offender. However, the court can abuse its discretion by imposing a sentence which apparently disregards those criteria, without a suitable explanation. *State* v. *Middleton* (Jan. 15, 1987), Cuyahoga App. No. 51545, unreported.

In this case, the court stated that it considered "all the criteria set forth in [Chapter] 2929 of the Ohio Revised Code pertaining to penalty and sentencing." However, it did not identify any statutory factor which encouraged the maximum penalty it selected. The record seemingly shows several mitigating factors listed in R.C. 2929.13(A) without any aggravating factors listed in R.C. 2929.13(B) or 2929.22(B).

A talismanic incantation that the court followed those standards may not suffice, when the result seems strikingly inconsistent with them. *Cleveland* v. *Egeland, op. cit.; State* v. *Middleton, supra.* While we share the trial judge's strong concern about crimes which undermine the administration of justice, the courts must respond to applicable legislative standards. Without further explanation, the court abused its discretion by imposing maximum consecutive sentences here. Consequently, we remand any remaining convictions for reconsideration or further explanation.

The sixth assignment claims that the court should have merged the falsification and tampering convictions into the bribery conviction, pursuant to R.C. 2941.25(A). The defendant asserts that the three convictions involve the same conduct and constitute allied offenses of similar import. However, the three offenses were committed separately at separate times, so they are not the same conduct. Cf. *State* v. *Rice* (1982), 69 Ohio St. 2d 422, 426-427, 23 O.O. 3d 374, 377, 433 N.E. 2d 175, 179; *State* v. *Barnes* (1981), 68 Ohio St. 2d 13, 22 O.O. 3d 126, 427 N.E. 2d 517; *State* v. *Stubblefield* (Sept. 8, 1983), Cuyahoga App. No. 46479, unreported. Consequently, they would not merge for sentencing purposes.

We sustain the fourth and fifth assigned errors, but overrule the sixth assigned error.

## V

Because of our rulings on the first assignment of error, we reverse the defendant's convictions for falsification and tampering with records, and

dismiss those charges. Because of our rulings on the remaining assignments of error, we affirm the defendant's conviction for bribery. Because of our ruling on the fifth assignment of error, we remand his bribery conviction for reconsideration or further explanation of an appropriate sentence.

*Judgment accordingly.*

PRYATEL and DYKE, JJ., concur.

Appendix

Assignments of Error

"I. The trial court erred as a matter of law in overruling appellant's motions for acquittal where the evidence was insufficient to sustain the convictions or, in the alternative, the verdicts were against the manifest weight of the evidence.

"II. The improper conduct of the prosecuting attorney throughout the trial prevented defendant from having a fair trial and denied him due process of law.

"III. The overwhelming abuse of discretion by the court in conducting the trial denied appellant due process of law and the right to a fair and impartial trial.

"IV. The trial court erred as a matter of law, abused its discretion, and denied appellant due process of law by failing to consider the mandatory provisions of the multiple sentence statute.

"V. The trial court erred as a matter of law, abused its discretion, and denied appellant due process of law by imposing maximum consecutive sentences and failing to consider the mandatory factors and the statutory guidelines set forth under O.R.C. Sections 2951.02, 2929.13 and 2929.22.

"VI. The trial court erred as a matter of law, abused its discretion, and denied appellant due process of law by failing to make an inquiry as to the applicability of the multiple count statute and/or in failing to sentence under the multiple count statute.

"VII. Appellant was denied his constitutional right to the effective assistance of counsel."