[Cite as *In re J.D.*, 2014-Ohio-5726.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF : | ) | |
| | ) | |
| J.D. DOB 11/11/01 | ) | |
| K.D. DOB 10/12/09 | ) | CASE NO. 14 MA 33 |
| A.R.G. DOB 3/8/11 | ) | |
| | ) | OPINION |
| ALLEGED DEPENDENT CHILDREN. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas, Juvenile Division of Mahoning County, Ohio
Case No. 04JC799

JUDGMENT:    Affirmed

APPEARANCES:
For Appellee                      Attorney Lori Shells
Mahoning County Children Services    222 W. Federal St. 4th Floor
Youngstown, Ohio 44503

For Appellee                      Attorney David S. Barbee
Karen McMillen                    100 East Federal Street, Suite 600
CASA/Guardian ad Litem            Youngstown, Ohio 44503-1893

For Appellant                     Attorney Judith M. Kowalski
333 Babbit Road #323
Euclid, Ohio 44123

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: December 26, 2014

DONOFRIO, J.

{¶1} Appellant, Rebecca D., appeals from a Mahoning County Juvenile Court judgment granting permanent custody of her three children to appellee, Mahoning County Children's Services.

{¶2} This case involves the permanent custody of three children. J.D. was born November 11, 2001, to appellant and William H. K.D. was born on October 12, 2009, to appellant and Roy D. And A.G. was born on March 8, 2011, to appellant and Kevin G.

{¶3} J.D. was adjudicated dependent on October 21, 2004. Appellee was granted temporary custody of J.D. and a case plan was put in place for appellant. Appellant regained custody of J.D. on February 8, 2007. J.D. was removed from appellant's care again in June 2007. This time J.D. was placed in the temporary custody of her father under protective supervision. At this time, appellant tested positive for marijuana, cocaine, and opiates. Although the record is not entirely clear, it seems that J.D.'s father became homeless and appellant regained custody of J.D. once again in 2011.

{¶4} K.D. entered into appellee's temporary custody shortly after her birth in October 2009. K.D. tested positive for opiates when she was born. Appellant was incarcerated at the time she gave birth to K.D. K.D. was adjudicated dependent on December 11, 2009.

{¶5} A.G. was adjudicated dependent months after her birth in March 2011. A.G. remained in appellant's care and appellee was granted protective supervision.

{¶6} On July 10, 2012, J.D. and A.G. were placed in appellee's temporary custody due to appellant's positive test for opiates and heroin. J.D. was again adjudicated dependent.

{¶7} Appellant was accepted into the Family Dependency Treatment Court in September 2012. On October 17, 2012, appellant was found to be in contempt of court and was placed in jail. She remained in jail until November 13, 2012, when she was released to Quest Recovery.

{¶8} On February 1, 2013, appellant was once again found to be in contempt

of court and was sent back to jail where she remained for approximately one month. She was terminated from Family Dependency Treatment Court due to non-compliance with the program.

**{¶9}** Appellee filed motions for permanent custody of all three children on March 25, 2013. The court appointed a guardian ad litem (GAL) for the children.

**{¶10}** The matter was first set for a hearing on the permanent custody motion on June 17, 2013. Appellant submitted to a drug test before going on the record. She tested positive for benzodiazepine, cocaine, and opiates. The court was unable to go forward because appellant appeared to be under the influence. The matter was rescheduled.

**{¶11}** The matter proceeded to a permanent custody hearing before a magistrate on August 6, 2013. That same day just hours before the hearing, Nancy and Leland W., appellant's mother and her husband, filed a motion to intervene. The court denied the motion to intervene citing its untimeliness and their failure to meet the burden of proving that they were proper parties to the proceeding.

**{¶12}** Appellant failed to appear at the permanent custody hearing without explanation. Her attorney did appear. One of the three fathers also appeared. The magistrate proceeded with the hearing. The magistrate heard testimony from appellant's counselor, the family's caseworker, and the GAL. The magistrate found by clear and convincing evidence that the children cannot be placed with any of the parents within a reasonable time and should not be placed with any of the parents and that placement with any of the parents would not be in the children's best interests. Therefore, the magistrate ordered that the children were to be placed in appellee's permanent custody and that all parental rights were terminated.

**{¶13}** Appellant filed objections to the magistrate's decision arguing that (1) she substantially complied with her case plan and (2) the magistrate failed to consider placing the children with their maternal grandmother.

**{¶14}** The trial court overruled appellant's objections. It adopted the magistrate's order and entered judgment accordingly.

**{¶15}** Appellant filed a timely notice of appeal on March 27, 2014. The trial court stayed its judgment pending this appeal. None of the three fathers appealed from the permanent custody judgment entry.

**{¶16}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, this right is not absolute. *In re Sims*, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, ¶23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id.*

**{¶17}** We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *Sims*, 7th Dist. No. 02-JE-2, ¶36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶18}** Appellant raises five assignments of error. Because appellant's fourth assignment of error directly affects our resolution of her first assignment of error, we will address it first. Appellant's fourth assignment of error states:

THE JUVENILE COURT ABUSED ITS DISCRETION IN DETERMINING THAT CLEAR AND CONVINCING EVIDENCE SUPPORTED ITS DECISION TO AWARD PERMANENT CUSTODY TO THE MAHONING COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES; FURTHER, THE AWARD OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶19}** Here appellant asserts that appellee failed to present sufficient evidence to support an award of permanent custody. She notes the record is not clear as to why her drug treatment attempts were unsuccessful. She also points out the evidence demonstrated that A.G.'s father was current on his child support and exercises visitation. Appellant further contends appellee did not demonstrate that

placement with relatives was given adequate consideration.

{¶20} The trial court may grant permanent custody of a child to the agency if the court determines by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d).

{¶21} Likewise, the trial court may grant permanent custody of a child to the agency if the court determines by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and if the child has not been in temporary custody for 12 or more months of a consecutive 22-month period and the court determines by clear and convincing evidence that the child cannot or should be placed with either parent within a reasonable time. R.C. 2151.414(B)(1)(a).

{¶22} Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

{¶23} The trial court found that K.D. has been in appellee's custody for 12 or more of the last 22 months. It noted she has been in appellee's temporary custody since October 2009.

{¶24} The court found that although J.D. and A.G. have not been in appellee's temporary custody for 12 of the past 22 months, they cannot be placed with any of their parents within a reasonable time and should not be placed with any of their parents. Specifically, the court found that despite reasonable case planning and diligent efforts by appellee, appellant has failed repeatedly to remedy the conditions that caused the children's removal. R.C. 2151.414(E)(1). The court noted that appellant was offered substance abuse and mental health treatment on multiple occasions and failed or refused to use these services in a meaningful way. It pointed out that appellant was negatively terminated from several of the programs and eventually ceased all substance abuse and mental health services. The court also

found that appellant's chronic substance abuse and mental illness prevent her from being able to provide a permanent home for the children at the present time or within the next year. R.C. 2151.414(E)(2).

**{¶25}** The evidence supports the trial court's findings on these points.

**{¶26}** Kelly Rader, the caseworker, testified that K.D. entered appellee's temporary custody on October 22, 2009, while J.D. and A.G. entered appellee's temporary custody on July 10, 2012. (Tr. 29).

**{¶27}** Rader also testified regarding appellant's case plan. She stated that appellant's goals were to obtain a mental health assessment and follow all recommendations of the provider, to obtain a drug and alcohol assessment and comply with all recommendations of the provider, to submit to random drug screens, and to provide a stable drug-free home for the children. (Tr. 31).

**{¶28}** Rader testified that appellant failed the drug treatment program at Meridian Services three times. (Tr. 32). Appellant also failed the Quest program. (Tr. 32). And she was negatively terminated from Family Dependency Treatment Court. (Tr. 32). Rader stated appellant was incarcerated when she refused a drug screen and admitted to using heroin. (Tr. 34). Appellee then offered appellant a bed at the Women's Center, but appellant refused it. (Tr. 35). Appellant attempted Meridian Services as recently as March 2013, but was negatively terminated from its methadone program in May 2013. (Tr. 35). Since that time, appellant had not made any attempts to comply with the substance abuse part of her case plan. (Tr. 35).

**{¶29}** As to the mental health goal, Rader testified that appellant was diagnosed with bipolar disorder in April 2012. (Tr. 36). Rader stated appellant has not followed through with the recommended counseling. (Tr. 36). Appellant only kept two appointments since April 2012. (Tr. 36).

**{¶30}** As to the housing goal, Rader testified that appellant lives with her mother. (Tr. 36). She stated that the home is not drug-free. (Tr. 36). Rader testified that she learned upon contact with the New Middletown Police that in 2012, a man was found at the home who had overdosed on heroin. (Tr. 36). Additionally, several

recent arrests were made outside of the home. (Tr. 37). Those arrested claimed they were there to collect money from appellant and when the police searched their car, they located drugs. (Tr. 37).

**{¶31}** Thus, the evidence supports the trial court's findings that K.D. has been in appellee's custody for 12 or more of the last 22 months and that although J.D. and A.G. have not been in appellee's temporary custody for 12 of the past 22 months, they cannot be placed with any of their parents within a reasonable time and should not be placed with any of their parents.

**{¶32}** In determining whether it is in the child's best interest to grant custody to the agency, the court shall consider:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, * * * with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

**{¶33}** We must consider the rest of the evidence in light of these factors when examining the children's best interests.

**{¶34}** Carrie Rapinsky was appellant's counselor at Meridian Services.

Rapinsky testified that appellant started on the methadone program there but never even completed phase one of the program. (Tr. 19, 21). Rapinsky stated appellant was terminated from the program. (Tr. 22).

**{¶35}** In addition to her previously cited testimony, Rader testified that appellant gave birth to K.D. while she was incarcerated and K.D. tested positive for opiates at birth. (Tr. 30). J.D. and A.G. came into appellee's custody when appellant tested positive for elevated heroin levels. (Tr. 30).

**{¶36}** Rader testified that on her last visit with appellant, appellant indicated she did not want to come to any more hearings and just wanted to give up. (Tr. 38). She stated that appellee has tried to help appellant by providing such services as transportation to visits, helping to get her in to substance abuse treatment programs, and following up on her medical care. (Tr. 38-39).

**{¶37}** Rader further testified that appellant has been inconsistent in visiting the children. (Tr. 40). She noted that in 2012, appellant only attended 13 of 40 visits. (Tr. 40). She also pointed out appellant did not visit for several months due to her incarceration. (Tr. 40). After she was released from jail, appellant attended 12 of 22 visits. (Tr. 41).

**{¶38}** As to the fathers, Rader testified that Roy D., K.D.'s father, is not involved in K.D.'s life and does not visit her. (Tr. 42). Roy D. told Rader he could not care for K.D. because he is homeless. (Tr. 42). Rader testified that William H., J.D.'s father has not been involved in J.D.'s life and has not responded to Rader's phone calls or letters. (Tr. 44). She stated that J.D. did live with her father some time ago and that she was fearful of him noting that he put hot peppers in her mouth as punishment. (Tr. 44). Finally, Rader testified that Kevin G., A.G.'s father, is a truck driver who is frequently on the road. (Tr. 45). He lived with appellant for some time. (Tr. 45). During this time, he left A.G. with appellant. (Tr. 45-46). Also during this time, there was drug activity going on at the house. (Tr. 46). And Rader stated that A.G. was not current on her shots when she resided with appellant and Kevin G. (Tr. 46). From July 10, 2012, to December 4, 2012, Kevin G. attended four of 17 visits

with A.G. (Tr. 51). In 2013, he attended 16 of 27 visits. (Tr. 52).

**{¶39}** In conclusion, Rader testified that appellant had had approximately four years to get her life together and complete her case plan but had failed to do so. (Tr. 55). She stated that K.D. was in a good home and her foster parents were willing to adopt her. (Tr. 55). She also stated that J.D. and A.G. were good children and could be adopted. (Tr. 55). Rader opined that the children deserved better and, therefore, recommended that the court grant permanent custody with the power of adoption to appellee. (Tr. 55).

**{¶40}** The GAL recommended to the court that it grant permanent custody to appellee. (Tr. 64). The magistrate questioned the GAL. In response to the magistrate's questions, the GAL stated that during the visits she observed between appellant and the children, she noticed that there was no communication between K.D. and appellant. (Tr. 67). She noticed at times K.D. was standing alone in the corner. (Tr. 67). She stated appellant never gave K.D. much attention at the visits. (Tr. 67). The GAL further testified that J.D. got along well with appellant and took care of her younger sisters. (Tr. 67). And she stated that A.G. is a happy, content child and is pleased to be around anybody, including appellant. (Tr. 67).

**{¶41}** Additionally, the GAL submitted her report. (Tr. 64).

**{¶42}** In her report, the GAL stated that when J.D. lived with appellant, J.D. was not supervised, ate junk food whenever she wanted, cooked for herself, and took care of her baby sister A.G. J.D. told the GAL she has seen appellant use drugs and does not want to live with her unless she gets help. Since entering foster care, J.D. has lost 30-35 pounds and is thriving. She enjoys eating balanced meals and is healthy and happy.

**{¶43}** As to K.D., the GAL reported she has been in foster care since she was ten days old. She is uncomfortable around appellant during visits because the visits are not consistent. The GAL never observed appellant holding K.D. and there has been no bonding. K.D. is now a happy and healthy three-year-old.

**{¶44}** As to A.G., the GAL reported that in the spring of 2012, J.D. tried taking

A.G. in a stroller to the Dairy Queen located one mile away. The girls were on a busy road with no sidewalks on a chilly day. The police questioned J.D. about where she was going. Appellant did not know or care that the girls were gone from the home. A.G. has not bonded with appellant. Appellant did not hold or feed A.G. when the GAL observed them. Instead, J.D., who was ten years old at the time, took care of A.G. while appellant lounged on the couch.

{¶45} Applying this evidence to the best interest factors supports the trial court's finding that it is in the children's best interest that they are placed in appellee's permanent custody.

{¶46} Considering the children's relationships with appellant, each other, and others (R.C. 2151.414(D)(1)(a)), the GAL reported that K.D. is not bonded with appellant. She is happy and healthy with her foster parents and they are willing to adopt her. As to J.D., the GAL reported that she gets along well with appellant. As to A.G., the GAL reported appellant has not bonded with her. The GAL's report and testimony also suggested that J.D. and A.G. are closely bonded to each other as J.D. has basically assumed the mother role over A.G. K.D., however, has spent her entire life with a foster family away from her sisters.

{¶47} Considering the children's wishes (R.C. 2151.414(D)(1)(b)), the only child old enough to express her wishes was J.D. She relayed to the GAL that she gets along well with appellant but does not want to live with appellant unless she gets help with her drug addiction.

{¶48} Regarding the children's custodial history (R.C. 2151.414(D)(1)(c)), K.D. has been in foster care her entire life. J.D. was initially in appellant's care. She then spent some time in her father's custody before returning to appellant's care. At the time of the hearing, she had been in appellee's temporary custody for approximately one year. A.G., likewise, had been in appellee's temporary custody for approximately one year.

{¶49} As to the children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent

custody to appellee (R.C. 2151.414(D)(1)(d)), the testimony indicated that appellee has been attempting to help appellant meet her case plan goals for approximately four years. And while appellant has initiated treatment for her drug addiction and mental health issues numerous times, she has failed treatment every time. It is unlikely that if appellant is given more time to meet her goals that the result will be any different. Moreover, none of the children's fathers have filed an appeal to the grant of permanent custody. In fact, only A.G.'s father appeared at the permanent custody hearing. Thus, a legally secure permanent placement with any of the fathers is highly unlikely.

{¶50} Finally, as to whether any of the factors set out in R.C. 2151.414(E)(7) to (11) apply (R.C. 2151.414(D)(1)(e)), one factor applies. The factor set out in R.C. 2151.414(E)(9) provides:

> The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

Appellant placed K.D. at substantial risk of harm when K.D. was born with opiates in her system. And an incident occurred where J.D. was pushing A.G. in a stroller down a busy road with no sidewalks and appellant did not know or care that the girls were gone from the house. Additionally, the testimony demonstrated that appellant has rejected and refused treatment multiple times even though it was part of her case plan.

{¶51} Given this evidence and its application to the statutory best interest factors, the trial court's finding that it is in the children's best interest to grant their permanent custody to appellee is supported by clear and convincing evidence.

**{¶52}** Accordingly, appellant's fourth assignment of error is without merit.

**{¶53}** Appellant's first assignment of error states:

THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶54}** Appellant contends she was denied effective assistance of counsel. In support, appellant points out that her attorney failed to cross-examine any of the witnesses, failed to make an opening statement or closing argument, failed to ask for a continuance due to appellant's failure to appear, and failed to advocate on behalf of the maternal grandmother.

**{¶55}** R.C. 2151.352 provides that parents are guaranteed the right to counsel at all stages of a permanent custody proceeding. This right to counsel includes the right to effective assistance of counsel. *In re Brooks*, 10th Dist. Nos. 04AP-164, 04AP-202, 04AP-165, 04AP-201, 2004-Ohio-3887, ¶24. In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases. *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (8th Dist.1998).

**{¶56}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, the appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, the appellant must demonstrate he or she was prejudiced by counsel's performance. *Id.* To show that he or she has been prejudiced by counsel's deficient performance, the appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶57}** Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In

Ohio, a licensed attorney is presumed competent. *Id.*

{¶58} This matter was first scheduled for a permanent custody hearing on June 17, 2013. Appellant tested positive for drugs that day before going on the record. The court was unable to go forward because appellant appeared to be under the influence. The matter was rescheduled for August 6.

{¶59} Appellant did not appear for the August 6 permanent custody hearing. But appellant's counsel did appear. There is no indication on the record that appellant's counsel moved for a continuance given appellant's absence. Nor did she state any reason on the record as to why appellant was not present. The magistrate asked counsel if appellant was present. (Tr. 3). Counsel simply replied, "She's not here." (Tr. 3).

{¶60} Moreover, appellant's counsel did not present a case on appellant's behalf. She declined to cross examine each of appellee's three witnesses. (Tr. 26, 56, 65). And she did not present any witnesses on appellant's behalf.

{¶61} Additionally, appellant's counsel filed objections to the magistrate's decision arguing (1) that appellant substantially complied with her case plan and, therefore, permanent custody was not in the children's best interest and (2) that the magistrate failed to consider the children's relationship with their maternal grandmother. The problem with these objections, however, was that counsel failed to put on any evidence in support of these arguments at the permanent custody hearing. If counsel had an argument that appellant substantially complied with her case plan, she should have cross examined the caseworker who testified as to the numerous ways appellant failed to comply with the case plan. And if counsel believed that the children's relationship with their grandmother was an important consideration in this case, she should have called the grandmother as a witness.

{¶62} The test for ineffective assistance of counsel requires not only a showing of ineffectiveness, but also a showing of prejudice. As we detailed in appellant's fourth assignment of error, the evidence was overwhelming in support of granting permanent custody to appellee. Given the overwhelming evidence, we

cannot say that even if appellant's counsel had asked for a continuance, cross examined the witnesses, and called the grandmother to testify that the result of the hearing would have been different.

**{¶63}** Additionally, other courts have been less critical of counsel in permanent custody cases where the parent has failed to appear for the hearing. In an Eighth District case, the mother appealed arguing she was deprived of the effective assistance of counsel because her counsel was not prepared to proceed in her absence and because counsel failed to object to inadmissible and damaging hearsay elicited during the adjudication and dispositional hearings. *In re McCullough*, 8th Dist. No. 79212, 2001 WL 1554153 (Dec. 6, 2001). In overruling the mother's assignment of error, the court stated:

> We cannot conclude that appellant was deprived of the effective assistance of counsel because appellant's counsel cannot be deemed deficient under the circumstances. Although appellant's counsel stated that he was not prepared to proceed in the absence of his client, this statement alone does not demonstrate that appellant failed to receive the effective assistance of counsel. We agree with the following analysis by the Second Appellate District which overruled an assignment of error pertaining to a mother's claim of ineffective assistance of counsel when she failed to appear at a permanent custody hearing:

> By her own conduct, Dixon hampered the ability of her counsel to prepare for trial and mount a defense, yet Dixon now wishes to cry foul because her counsel was not prepared. We simply cannot countenance a form of invited error whereby a party hinders the efforts of her attorney to provide effective representation, and then later complains about the quality of that representation. *In re: Dixon* (Apr. 24, 1998), Clark App. No. 97-CA-0027 & 97-CA-0028, unreported.

*Id.* at *3-4. See also*, *In re C.R.*, 6th Dist. No. L-13-1110, 2013-Ohio-5069 (no ineffective assistance of counsel where counsel's participation in the permanent custody hearing was minimal but mother failed to appear despite her notice, counsel was unsure of mother's wishes, and mother did not appear to cooperate in her defense); *In re N.H.*, 9th Dist. No. 24355, 2008-Ohio-6617 (no ineffective assistance of counsel where father's attorney failed to call father's therapist to testify on his behalf where father failed to explain what therapist would have testified to and failed to demonstrate how therapist's testimony would have changed the outcome of the proceedings and father failed to appear at permanent custody hearing).

**{¶64}** Additionally, courts have found that the failure to cross examine the state's witnesses does not necessarily amount to ineffective assistance of counsel. For instance in *In re H.K.*, 2d Dist. No. 2010 CA 24, 2011-Ohio- 753, the mother in a permanent custody case argued her counsel was ineffective for failing to cross examine the state's witnesses. But the Second District overruled the mother's argument, citing to case law that trial counsel's decision whether to cross examine a witness is a tactical matter within his or her discretion and, therefore, it cannot be the basis for a claim of ineffective assistance of counsel. *Id.* at ¶17, citing *State v. Flors*, 38 Ohio App.3d 133, 139, 528 N.E.2d 950 (8th Dist.1987), *State v. Allen*, 2d Dist. No. 22835, 2009-Ohio-3505. See also, *In re Ball*, 9th Dist. Nos. 19158, 19178, 1999 WL 247187 (Apr. 21, 1999), (claim that counsel failed to effectively cross examine witnesses did not give rise to claim of ineffective assistance of counsel); *Matter of Heard*, 5th Dist. No. CA-8920, 1992 WL 398193, *1 (Dec. 29, 1992), ("Failure to cross-examine is not, by itself, sufficient to demonstrate ineffective assistance of counsel.")

**{¶65}** It is possible that appellant's counsel made a calculated decision not to cross examine the witnesses or to call witnesses of her own. Questionable trial strategy does not compel a finding of ineffective assistance of counsel. *State v. Smith*, 89 Ohio St.3d 323, 328, 731 N.E.2d 645 (2000); *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). But when the failure to cross examine

witnesses is combined with the failure to ask for a continuance and failure to put on potentially favorable evidence to support her objections, it may raise a question as to counsel's effectiveness. Yet as stated above, there is no showing of prejudice in this case due to the overwhelming evidence in favor of permanent custody.

**{¶66}** Accordingly, appellant's first assignment of error is without merit.

**{¶67}** Appellant's second assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT BY DENYING THE MOTION FILED BY THE MATERNAL GRANDPARENTS TO INTERVENE IN THE ACTION.

**{¶68}** Appellant asserts here that the trial court erred in denying the maternal grandmother's motion to intervene. She points out that while the motion may have been untimely, the court could have granted a continuance. Appellant argues that had the court given the grandmother a chance to present her case, the outcome here may have resulted in the children being placed in their grandmother's custody.

**{¶69}** Appellant does not have standing to raise this issue on appeal.

**{¶70}** Where a grandparent files a motion to intervene which is denied and permanent custody is granted to the agency, the grandparent has standing to contest the denial of the motion to intervene. *In re D.S.*, 9th Dist. No. 24554, 2009-Ohio-4658, ¶7; *In re Adoption of T.B.S.*, 4th Dist. No. 07CA3139, 2007-Ohio-3559.

**{¶71}** A parent, however, does not have standing to appeal an order denying the children's grandparent's motion to intervene. *In re Lloyd*, 5th Dist. No. 2005 AP 010003, 2005-Ohio-2380, ¶35.

**{¶72}** Thus, the grandmother in this case could have filed an appeal from the judgment denying her motion to intervene. She chose not to do so. Appellant, as the mother in this case, has standing to appeal from the judgment granting permanent custody of the children to appellee. But she does not have standing to appeal from the separate judgment denying the grandmother's motion to intervene.

{¶73} Accordingly, appellant does not have standing to assert that the trial court should have granted the grandmother's motion to intervene.

{¶74} Appellant's third assignment of error states:

THE APPELLANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL BY REASON OF THE GUARDIAN AD LITEM'S FAILURE TO FULFILL HER RESPONSIBILITIES UNDER OHIO SUP.R. 48, IN THAT SHE DID NOT EXERCISE DUE DILIGENCE IN CONDUCTING HER INVESTIGATION.

{¶75} In this assignment of error, appellant argues the GAL failed to communicate with one of the fathers involved in this case. She states, "[w]hile this failure might not have a direct effect on the Appellant, it calls into question whether the Guardian ad litem was sufficiently diligent in her investigation to make an appropriate recommendation for these children." Appellant goes on to argue that because the GAL did not fulfill the duties set out in Sup.R. 48, she was denied a fair trial.

{¶76} Sup.R. 48(D)(13) sets out the minimum requirements for a guardian ad litem:

(13) A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:

(a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is

present;

(b) Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;

(c) Ascertain the wishes of the child;

(d) Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case;

(e) Review pleadings and other relevant court documents in the case in which the guardian ad litem is appointed;

(f) Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;

(g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;

(h) Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court; and

(i) Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

**{¶77}** The GAL's most recent report documents that during the course of her investigation, she met with the children, appellant, the caseworker, the maternal grandmother, one of the paternal grandmothers, the foster parents, the New Middletown Police Chief, A.G.'s father, and J.D.'s father. The GAL also documented that she reviewed the caseworker's file, appellant's hospital file, a file from Franklin Release Center, police reports from Youngstown and New Middletown, and transfer/discharge papers from Quest Deliverance House.

{¶78} Kelly Rader, the caseworker, testified that Roy D., K.D.'s father, is not involved in K.D.'s life. (Tr. 42). She has contacted him by telephone. (Tr. 42). Rader testified that he told her he cannot care for K.D. because he is homeless, he was incarcerated for some time, and he did not have a job. (Tr. 42).

{¶79} Additionally, the GAL testified that she had contact with Roy D. in 2009. (Tr. 68). At that time, he had no job and was living in Florida. (Tr. 68). The GAL was able to contact Roy D.'s mother in May 2013, and asked her for his phone number, but the mother refused to tell the GAL his phone number and stated she would contact Roy D. herself. (Tr. 68-69). Roy D. never made contact with her. (Tr. 69).

{¶80} From the evidence it is clear that Roy D. was difficult to maintain contact with. According to Rader and the GAL, Roy D. is homeless and moves around a lot. Thus, the GAL may have had a difficult time locating him. She was only required to make "reasonable efforts" to contact him.

{¶81} Moreover, whether the GAL was able to make contact with Roy D. does not affect appellant's case. The GAL's report documents that except for her failure to contact Roy D., she made a thorough inquiry into the people involved in this case and researched the relevant documents as well. Appellant has not asserted that the GAL failed to make a comprehensive investigation into her life or failed to meet with the children, the caseworker, or the foster parents.

{¶82} Thus, appellant has not demonstrated that the GAL failed in her duties. Accordingly, appellant's third assignment of error is without merit.

{¶83} Appellant's fifth and final assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THE AWARD OF PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN.

{¶84} In her final assignment of error, appellant argues that permanent custody to appellee is not supported by the R.C. 2151.414(D)(1) best interest factors.

{¶85} As discussed in detail in appellant's fourth assignment of error, the

evidence supports the trial court's finding that permanent custody to appellee is in the children's best interests.

{¶86} Accordingly, appellant's fifth assignment of error is without merit.

{¶87} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, P.J., concurs.